UNITED STATES, Appellee

v.

JOHN F. O'BRIEN, Private E-2, U. S. Army, Appellant

3 USCMA 325, 12 CMR 81

No. 1955

Decided September 11, 1953

Abraham S. Robinson, Esq., Lt Col George M. Thorpe, U. S. Army, and 1st Lt Michael E. McGarvey, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, Lt Col Thayer Chapman, U. S. Army, Capt Irvin M. Kent, U. S. Army, and 1st Lt Elliott H. Eisman, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

The accused was tried by general court-martial in Germany upon two charges. Charge I alleged assault with intent to commit rape, and Charge II alleged wrongful appropriation of a Government vehicle, violations respectively of Articles 134 and 121, Uniform Code of Military Justice, 50 USC §§ 728 and 715. He pleaded not guilty, but was found guilty as charged and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for ten years. The convening authority reduced the period of confinement to four years but otherwise approved, and the board of review affirmed. Accused's petition to this Court for a review of the convictions was granted, the scope of the review being specifically limited to two issues. These are (1) whether the pretrial statement of the accused was admissible in evidence; and (2) whether the evidence was sufficient to support the finding of

326

guilty on the misappropriation charge. After a summary of the facts, which will be brief because the sufficiency of the evidence on the assault charge is not now in issue, we shall discuss these issues in the order stated.

### I

On July 21, 1952, the prosecutrix on the assault charge and her four-year-old son were walking along a country road close to a United States military reservation in Grafenwohr, Germany. It appears they were a short distance from a well-traveled highway and they were probably on or near the shoulder of what was an unimproved road. The accused approached them driving a jeep; he passed them; turned around; returned to the place where they were; and invited the prosecutrix to get in the jeep. When she refused, he alighted and, after failing in his efforts to force her into the vehicle, pushed her to the ground, held his hand over her mouth, struggled with her, and attempted to remove her underclothes. At that moment a cyclist and a jeep were passing near the scene of the assault. The second jeep was occupied by a Captain, whose attention was attracted by the location of the parked jeep. Upon driving near the parked vehicle, he observed that two people were struggling on the ground and he ordered his driver to stop. He then noticed the accused was lying on top of the prosecutrix. The accused, upon seeing someone approach, fled to his jeep and drove cross-country where his vehicle became mired in the mud. The Captain and his driver apprehended the accused and the Captain then intervened and attempted to quiet the prosecutrix. He observed the bumper marking on the jeep used by the accused and it was identified as belonging to the 7th Field Artillery Battalion.

In the pretrial statement, the accused admitted that on July 21, 1952, he took the jeep from the battalion area to go riding around the Grafenwohr area; that he saw a woman and a child sitting in the woods about thirty or forty yards from the road; that he drove over to her and started a conversation, but could not understand her because she spoke only German; that after a short period of time she started walking down the road and he followed in his jeep; that she stopped and he left the jeep, approached her, and put his hand on her breast; that she pushed his hand away and he grabbed her, at which time she must have slipped to the ground; that he kneeled down by her and put his hand on her knee and she started to scream; that he then drove away in his jeep and became stalled in a mudhole; that another jeep came along and the occupants sent for the military police; and that he made overtures to the woman because he had not had an overnight pass in two weeks and had not had any sexual intercourse during that time.

The accused took the stand in his own defense as to Charge I, and testified that the area in which the incident occurred was notorious because of the presence of many prostitutes; that as he was riding along he saw the prosecutrix and supposed that she belonged to that class; that although she refused his advances he took her actions to be merely a "come-on"; and that he had no intention of having sexual intercourse without her consent since it was broad daylight and a man would have to be out of his mind to attempt that next to a main highway. One defense witness corroborated accused's statement that many prostitutes were in the area, and stated that accused's reputation as to truthfulness and veracity was good.

### II

There are only two assignments of error upon which we permitted arguments, and they bear little discussion. Defense counsel first contend that the pretrial statement of the accused should not have been received in evidence because the warning required by Article 31 (*b*) of the Code, 50 USC § 602, was not given to accused. That subsection of the Article provides as follows:

"(*b*) No person subject to this code shall interrogate or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is

**327**

accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial."

The evidence discloses that Warrant Officer Sanders, who questioned the accused, did not read Article 31 verbatim, but he did explain thoroughly the substantial rights protected thereby. The accused was informed by the warrant officer that he was under investigation for assault with intent to commit rape; that he need not make any statement regarding the offense for which he was being investigated; that he need not answer any questions which would tend to incriminate or degrade him; that he could remain silent if he so desired. In addition, the meaning of the words "incriminate" and "degrade" was explained to him. When asked if he understood his rights, or if he wanted any further explanation, the accused answered that he understood and needed no further explanation. The investigator did not indulge in any threats or coercion toward the accused, no promises were made, and no inducements held out. Accused first told Sanders his version of the incident, then he wrote out the statement, initialed each page, and signed it. Just prior to writing the statement, the accused was again informed of his rights under Article 31.

We may dispose of one preliminary contention by pointing out that while a verbatim reading of this ■ Article may be desirable, it is not essential. The Article provides only that one who is being interrogated be *informed* of his rights. With one insignificant exception, hereinafter discussed, the information given by the warrant officer fully and adequately covered all the essential information the accused needed to be told.

The one exception referred to above was the failure of the investigator to inform accused that any ■ statement given by him could be used against him in a court-martial. Counsel for accused assert this failure renders the statement inadmissible. However, we disagree. Accused was advised that if he made any statement it could be used against him, and the mere recitation of the words "in a court-martial" would add little, if any, substance to the warning. Actually, the warning was broader than the requirement as the accused was led to believe it could be used for any and all purposes. Moreover, he was informed that he was under investigation for assault with intent to commit rape, and it is unreasonable to conclude that he would not anticipate the statement would be used in furtherance of that prosecution or the prosecution of any other offense revealed by his answers.

It is further contended that the pretrial statement was inadmissible because it contained refer- ■ ences to the offense of misappropriation and, at the time it was made, accused was advised only of the assault charge. We need comment only briefly on that contention. The Code requires that before the interrogation, the person asking the questions must inform the accused of the nature of the accusation. Prior to the time the accused made and signed the statement, the interrogating officer knew of only one offense of which the accused was suspected. As hereinbefore stated, the officer informed the accused that he was suspected of having assaulted a woman with intent to commit rape, and he further told him that anything he said could be used as evidence against him. It is not always possible to know of all the offenses which might be involved from a given state of facts, but it is necessary that one suspected of a crime know generally the subject of the inquiry. This puts him on notice of the purpose of the questioning, and thereafter, at least, anything not entirely foreign to the subject under discussion is volunteered at the accused's peril. Here, without compulsion of any kind, he related his version of the assault and extended his statement to include the misappropriation. The knowledge of that offense was gained from accused's statement and the failure of the investigator to anticipate it and warn the accused is immaterial to the admission of the statement.

The second assignment of error involves the contention that the evidence is insufficient to support ▮ the findings of guilty of wrongful appropriation. This contention likewise requires limited discussion. The accused was stationed at Schweinfurt, Germany, where his duties consisted of driving members of the reconnaissance and survey sections to various places within the military reservation. He was authorized to drive the jeep only as, and where, directed by his immediate superiors, and it was not to be used for his personal business. The commanding officer of the battery was unaware and unable to ascertain any mission the accused should have been on at that time and he could assign no reason for the presence of the jeep in that area. The accused's statement shows that about 3:00 p.m. he took the vehicle from the motor park for a drive around the Grafenwohr area and that approximately one hour later he noticed the woman in a small woods. He knew the reputation of the area and deviated from any well-used highway. When a Captain became suspicious because of the location of the vehicle and went to investigate, the accused used the vehicle in an attempted escape. From the accused's statement that he took the jeep to drive around, from his announced purpose for assaulting the woman, from the reputation of the area, and from the manner in which the jeep was used, the court-martial could find beyond a reasonable doubt that the sole and only reason for the afternoon trip was for the personal convenience of the accused. Moreover, the court-martial could find that when the accused deviated from the well-traveled roads he did so for the purpose of finding a woman, and that when he was caught in an embarrassing situation, his attempted escape in the jeep was an unlawful appropriation of the vehicle.

Accused has assigned other errors to overturn the findings of the court-martial and the board of review. We have considered them and either they are disposed of by the principles announced in this opinion or they are not of sufficient importance to justify treating separately.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.