UNITED STATES, Appellee

v

EARL LYONS, Jr., Private,
U. S. Army, Appellant

11 USCMA 68, 28 CMR 292

No. 13,022

Decided December 18, 1959

First Lieutenant Ralph T. Smith argued the cause for Appellant, Accused. With him on the brief were Lieutenant Colonel Ralph Herrod and First Lieutenant Thomas F. Shea.

First Lieutenant George J. Miller argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel James G. McConaughy and First Lieutenant Renald A. Manetti.

HOMER FERGUSON, Judge:

Contrary to his plea, the accused was found guilty of larceny of 18,240 pounds of coffee, property of the United States, valued at $13,666.40, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. The specification alleges, and it was the Government's theory, that the accused acted in conjunction with Sergeant L. C. Bolden and Private Ramon Aragon. Intermediate appellate authorities reduced the sentence adjudged but affirmed the findings, and we granted review on the issues whether the evidence is sufficient in law to establish accused's guilt and whether the law officer erred prejudicially in failing to clarify instructions on the element of wrongful taking. We dispose of the case on the first issue alone. Hence, a full recital of the evidence is required.

Accused was a stevedore assigned to work at Army port facilities in Inchon, Korea. On May 6, 1958, he was detailed as a truck guard. This was his first, and obviously his last, assignment to such duty. The truck dispatcher, Sergeant L. C. Bolden, assigned the accused to Truck 46–37. While waiting for the vehicle to be made ready, the accused was approached by Bolden, who asked how he would "like to make a $1,000.00." The accused asked him "doing what?" Bolden informed him that he need only ride the truck and "don't see anything." Accused would then be paid $1,000.00 on the same evening. Accused "accepted the bribe." Accused's truck, a tractor-trailer combination, purportedly loaded with 504 cases of coffee and driven by Private Aragon, arrived at the dispatcher's office. Accused assumed his station on the trailer and the truck was routinely checked through one of the port gates by military police guards. However, pursuant to instructions received from criminal investigators, the gate guards refrained from notifying the truck's ostensible destination, the 55th Quartermaster Depot, of its departure from Inchon. On the basis of previously received information that the truck's contents were to be diverted to illegal channels, Army Criminal Investigation Division agents followed it from Inchon past its destination, the 55th Quartermaster Depot, to a point beyond Seoul, a distance of at least seventeen miles further than it should have traveled. During the trip, the accused noticed that the truck stopped and he heard the door slam. In Seoul, the vehicle again halted and he observed a young Korean male leave the cab and walk away. Beyond Seoul, opposite Supply Point 41, the truck halted, and the driver came back to the trailer. He informed the accused "he could not find the place he was suppose [sic] to deliver this stuff too [sic] and was going to turn around and go back." Several Korean trucks drove up and parked in front of the Army vehicle. A Korean jeep also arrived on the scene, and another Korean left the Army truck cab and entered the jeep. The Army truck and trailer returned to Seoul, traveling in the direction of the 55th Quartermaster Depot and Inchon. In Seoul, CID agents apprehended the driver and the accused, ordering them to park their vehicle in a nearby Provost Marshal parking lot.

Upon being interrogated by CID agents, the accused first denied any knowledge of a proposed larceny. Finally, after undergoing a polygraph examination, he admitted being offered a bribe by Sergeant Bolden. Although the information was not incorporated in his written statement, he also orally admitted that he had "accepted the offer."

There is nothing in the record which establishes that accused knew of the truck's proper destination, or the route to be followed in order to reach it. On the contrary, it appears he knew neither where coffee was normally shipped nor the location of the Army's main supply area for Korea.

As is our duty, we have stated the foregoing facts in the light most favorable to the Government, resolving all controverted issues against the accused. The Government contends they establish that the accused was a principal in

the offense of larceny, which it argues was established by the truck's travel beyond its authorized destination, the offer of the bribe, its "rendezvous" with Korean vehicles, and the accused's failure to report Bolden's conversation with him. On the other hand, the defense, centering its attack on the identity of the property allegedly stolen as coffee and the failure to show that accused shared the felonious intent of Bolden and Aragon, urges that the evidence is insufficient to support the findings.

At the outset, we note that we are limited in our review of the sufficiency of evidence to sustain find- ings of guilty to a determi- nation whether there is justification, as a matter of law, for the decision of the fact-finders. Code, supra, Article 67, 10 USC § 867; United States v Brand, 10 USCMA 437, 28 CMR 3; United States v O'Neal, 1 USCMA 138, 2 CMR 44. Thus, we need only weigh the credible evidence against the elements of the offense charged or any lesser included offense, and if, legally, it could have established guilt, we must affirm. In short, it matters not whether we disagree with the court-martial's findings, if the verdict was permissible in view of the testimony. Unfortunately for the Government, the facts in this case establish little more than suspicion and conjecture concerning larceny or any of its lessor included offenses. We need not engage in speculation concerning the accused's guilt of other crimes.

In order to establish accused's guilt, it was incumbent upon the prosecution to establish that he wrong- fully took property of the United States, of the value alleged, with the appropriate specific intent, or aided and abetted his alleged co-actors in the undertaking. Code, supra, Article 121; Article 77, 10 USC § 877. Initially, we are concerned in this case with the lack of any showing that there was a wrongful taking of the truck's cargo. The Government argues that the testimony establishes that Aragon deviated substantially from the proper route to the 55th Quartermaster Depot and that this is sufficient to demonstrate the necessary asportation. Assuming, however, that the deviation from route was wrongful, there is nothing which tends to establish any intention on the part of Aragon, Bolden, or the accused to tamper with the cargo of coffee. The Government finds many sinister connotations in the converging of Korean vehicles upon the Army truck and trailer and the fact that at least two Korean nationals rode in the latter's cab. These circumstances, coupled with the accused's acceptance of a bribe to see nothing, are seized upon to establish the intent of the parties to deal criminally with the coffee. We agree they may be ample to arouse suspicion and cause an investigation, but they are hardly of the caliber necessary to support a larceny prosecution.

Finally, we have repeatedly pointed out that, in order to establish that an accused aided and abetted in the commission of an of- fense and was, therefore, a principal, it must be shown that he acted in concert with the actual perpe- trators and consciously shared the criminal intent which they entertained. United States v Miasel, 8 USCMA 374, 24 CMR 184; United States v Jackson, 6 USCMA 193, 19 CMR 319. Assuming *arguendo* that the evidence in this rec- ord is sufficient to show larceny of the coffee by Aragon and Bolden, a prop- osition with which we emphatically disagree, the only circumstance tending to show participation by the accused is his acceptance of Bolden's offer of a bribe. That connection is insufficient to establish a conscious sharing of the alleged intent of the co-actors. Lyons was not informed of the purpose of the bribe nor were any of the details of a plan to steal coffee brought to his at- tention. He agreed only to "see noth- ing," and this course of conduct could have related to any type of criminal endeavor. Thus, it is no more than sheerest speculation to contend there is a sufficient showing that he participated in the venture as something he desired to bring about. We are compelled, therefore, to reverse his conviction.

The board of review is reversed and

the record of trial is returned to The Judge Advocate General of the Army. The Charge and specification are ordered dismissed.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

This case involves only the inferences which may be drawn from a certain state of facts. As I read the record, the findings should be sustained, but no one in the field will be assisted in future cases by a dissenting opinion which merely points out areas of factual differences. Therefore, it is sufficient for my purposes to call attention to a general rule of aider and abettor which negates a holding that merely because the accused did not know all the details of the criminal venture, he is not guilty of the offense. Here the accused agreed to accept $1,000 for his contribution to an illegal enterprise which any reasonable person would know was the disposition of Government property through black market operations. When one knowingly participates in an unlawful scheme of that character, he must suffer the legal consequences of his actions and he is not relieved from criminal responsibility merely because he was not furnished with all the details of the contemplated transaction.