UNITED STATES, Appellee

v

HENRY J. SLUSS, Airman First Class,
U. S. Air Force, Appellant

14 USCMA 388, 34 CMR 168

No. 17,119

February 7, 1964

*Major James E. Caulfield* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Captain Donald W. Brewer* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

QUINN, Chief Judge:

Before a special court-martial, the accused was arraigned on a charge of violating an order regulating possession of firearms at Loring Air Force Base, Maine (Charge I), and a charge of larceny of a Government oxygen bottle and regulator assembly (Charge II), in violation of Articles 92 and 121, respectively, Uniform Code of Military Justice, 10 USC §§ 892 and 921. He pleaded guilty to the first charge and not guilty to the second. The court-martial convicted him of Charge I and, as to Charge II, found him guilty of the lesser offense of wrongful appropriation. It sentenced him to a bad-conduct discharge, confinement at hard labor for six months, and accessory punishments. The findings of guilty and the sentence were affirmed on intermediate review. The case is before this Court on two assignments of error relating to the wrongful appropriation offense.

Primarily, the accused contends the evidence is insufficient to support the findings of guilty. Review of the record of trial compels agreement with the contention.

Two witnesses testified for the Government. One was an agent of the Office of Special Investigations. He said that, with the accused's consent, he searched the trunk of the accused's car on May 2, 1963, and found a United States Government low pressure oxygen bottle, Type A–6, and regulator. Thereafter, he obtained two statements from the accused relating to his possession of this equipment. The substance of the statements is reflected in the accused's testimony at trial, and will be presently mentioned. The second Government witness was the "Recovery Team Chief" of the accused's maintenance squadron. He identified the oxygen bottle as a "walk-around bottle" for a B-52 or KC-135 aircraft, which was "used for moving from one position to another." He knew of no "military reason" to justify taking the bottle from the aircraft flight line. To his knowledge, no one had authority to allow anyone to take the bottle from the flight line, but he admitted that a maintenance man might "keep it a couple of days in his [own] car" under some circumstances, such as having

**389**

"a day off," or if it was "left in the car to be turned in the following day," or "something of that kind."

Several witnesses testified for the defense. Master Sergeant Kenneth C. Sapp, Flight Chief for the Squadron, testified that, while not "standard procedure," it was not "unusual" for a maintenance man who had drawn equipment from the supply unit, only to discover it was "not needed at that time," to retain such equipment in his possession "for future use." He could think of no use for the oxygen bottle other than that of a "walk-around bottle on a military aircraft." On cross-examination by trial counsel, he said an airman would "[p]robably not" retain equipment for a period of five months, but he "wouldn't say it has never happened before." He, personally, would not permit anyone to take the bottle from the flight line.

Airman First Class Herman M. Weidner testified he was with the accused when they received a report from the flight chief that an oxygen bottle on an aircraft then in service was "low." They obtained a new bottle from the supply unit and went to the aircraft, but the flight crew was gone. The defective aircraft bottle was serviced by the ground crew of an adjoining plane, and the replacement bottle was placed in the trunk of the accused's car. The next day Weidner and the accused returned to the plane with the new bottle. They ascertained that the aircraft bottle was in good condition "so . . . [they] didn't need another one." That evening they brought the new bottle back to supply, but supply was closed. The bottle was taken to the barracks and remained there until they "came off alert." They retained the bottle because "someone else could have picked it up and it was a good bottle." Weidner further testified that standing operating procedure required that equipment be brought "back where it belongs." Weidner, however, knew of no instructions prohibiting the taking of equipment from the flight line; on the contrary, he believed it was "proper . . . in certain circumstances." He also believed it "would be common" to retain an oxygen bottle

for as long as five months. Airman Second Class Larry T. Hagler testified he had seen the oxygen bottle in the barracks. He asked the accused about it and was told "it belonged to the aircraft and . . . [the accused] was going to take it back."

Testifying in his own behalf, the accused related substantially the same story as Airman Weidner as to obtaining the bottle from supply, and the subsequent determination that it was not needed in the aircraft serviced by his unit. He also admitted he took the bottle to the barracks for the remaining period of the alert. When the alert ended he put the bottle and some tools in the trunk of his car. It remained there for a time. Then he noticed the pressure was low. He attributed the condition to the cold, so he brought the bottle to the barracks. At the end of April, he again placed the bottle in the trunk of his car. In May, he was asked by the agent of the Office of Special Investigations if he had Government property in his possession, and he told him about the oxygen bottle in his car. The accused said he had retained the bottle because in the past his group had had difficulty in getting a trouble-free bottle and regulator, and he believed it was "lucky to get a good unit." The bottle was open to public view, and he had no intention of keeping it for his own use. He merely kept it to await an occasion when it was "needed in the future." On cross-examination, he admitted he had no specific authority to take the bottle from the flight line, but he insisted it was "common practice" to do so. He knew of no use for the bottle other than that for which "it is intended," that is, a walk-around bottle on a military aircraft.

Unquestionably, the evidence shows a withholding of Government equipment by the accused. ▬▬▬▬ Wrongful appropriation, ▬▬▬▬ however, requires more than that. The act of withholding must be accompanied by an "intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any per-

390

son other than the owner." Article 121(a)(2), Uniform Code of Military Justice, 10 USC § 921; United States v Roark, 12 USCMA 478, 31 CMR 64; United States v Norris, 2 USCMA 236, 8 CMR 36. The record of trial demonstrates that the accused's intention was merely to facilitate maintenance work for the Government, and that the evidence is legally insufficient to support the findings of guilty. United States v Peterson, 1 USCMA 317, 3 CMR 51; United States v Lyons, 11 USCMA 68, 28 CMR 292.

The uncontradicted evidence established that the accused properly acquired possession of the ▮▮▮▮▮▮ oxygen bottle. The Government showed that his supervisory personnel, if asked, would not have given him permission to remove the bottle from the flight line. There is, however, no evidence of any order or regulation prohibiting such removal. On the contrary, one of the Government's own witnesses admitted that under some circumstances the bottle could be taken from the flight line and retained in the private vehicle of a repairman for at least "a couple of days." Even if the evidence as to standing operating procedure be construed as a directive against removal, the evidence, in a light most favorable to the Government, still shows no more than a violation of an order. Violation of an order or regulation is not a violation of Article 121. United States v Huggins, 12 USCMA 686, 689, 31 CMR 272.

Weidner's testimony, which was consistent, straightforward and unimpeached, established that the accused removed the bottle from the flight line for a wholly legitimate purpose. His testimony, along with the accused's, shows the accused may have been negligent, and perhaps subject to censure for possible interference with other maintenance personnel in the discharge of their responsibilities; but it also demonstrates the absence of an intent to deprive the Government of the benefit of the oxygen bottle or to appropriate it for the use of another. Cf. United States v Miles, 11 USCMA 622, 29 CMR 438. The mere ▮▮▮▮▮ failure of a custodian to ▮▮▮▮▮ deliver property entrusted to him within a particular period of time does not give rise to an inference against him, unless there is a demand for return of the property, or delivery is specifically due. See United States v Keleher, 14 USCMA 125, 33 CMR 337. Assuming retention of the bottle for a period of five months may, in some circumstances, support an inference of an intent to deprive the Government of the use or possession of the bottle, all the evidence in this case so attenuates the inference as to make it wholly insufficient to support the findings of guilty. United States v Peterson, supra, page 322; United States v Bull, 12 USCMA 514, 31 CMR 100.

In view of our conclusion that the evidence is insufficient to show the intent requisite to a conviction for wrongful appropriation, we need not consider the other assignment of error, which deals with the correctness of the instructions. The decision of the board of review as to Charge II is reversed; the findings of guilty thereon are set aside, and the charge is ordered dismissed. The record of trial is returned to The Judge Advocate General of the Air Force for submission to the board of review for reconsideration of the sentence in light of the remaining findings of guilty.

Judges FERGUSON and KILDAY concur.