UNITED STATES, Appellee

v

DIETER A. LUTGERT, Staff Sergeant,
U. S. Army, Appellant

18 USCMA 382, 40 CMR 94

No. 21,665

June 13, 1969

*Captain James E. Higgins* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker,* and *Major David J. Passamaneck.*

*Captain Mark Rosenberg* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major Edwin P. Wasinger.*

### Opinion of the Court

FERGUSON, Judge:

Upon his conviction for larceny of Government property (two space heaters), and wrongful appropriation of a Government truck, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, the accused was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for one year. Intermediate appellate authorities have affirmed the findings and sentence. We granted review to determine whether the evidence was legally sufficient to sustain

the findings of guilty of wrongful appropriation of a Government truck (specification 2).

In the main, the Government's evidence relating to the specification of wrongful appropriation was introduced through utilization of the following two stipulations of fact (Prosecution Exhibits 1 and 2), agreed to by the accused and the attorneys for the prosecution and defense:

"On 26 October 1967 Lieutenant William E. McHugh was the Staff Duty Officer for 4th Squadron, 7th Cavalry. Sometime between 1300 and 1400 hours, on 26 October 1967, Staff Sergeant Dieter A. Lutgert and Staff Sergeant Lafayette Jackson walked into the Squadron Tactical Operation Center and asked Lieutenant McHugh to sign a trip ticket for a three-quarter-ton truck to go to the orphanage. The Squadron was, at this time, doing a great deal of work with the orphanage. The two Sergeants did not have a trip ticket, so Lieutenant McHugh sent them to the Headquarters Troop CQ for a trip ticket. The two Sergeants returned in approximately one-half hour with a trip ticket. Lieutenant McHugh signed the trip ticket and the Sergeants departed.

"Lieutenant McHugh had the authority on 26 October 1967, to sign off-duty trip tickets. Since 26 October was a division holiday, only Lieutenant McHugh, as Staff Duty Officer, could sign the trip ticket and authorize a vehicle to be dispatched." [Prosecution Exhibit 2.]

"On the afternoon of 26 October 1967 Specialist Four Patrick C. Divis was a gate guard at the main gate of Camp McKenzie, Korea. Sometime between 1500 and 1700 hours, 26 October 1967, Specialist Divis saw the accused, Sergeant Dieter A. Lutgert, drive a three-quarter-ton truck out of the main gate. The truck had the bumper marking A43 and instead of the regular canvas it had a black wooden enclosure built on the back. As the truck left the main gate it turned right and headed toward the village of Unchon-ni.

"Specialist Divis saw two people in the cab of the truck. He recognized the accused as the driver but did not get a good look at the other person and was unable to recognize him. Specialist Divis noticed nothing unusual about the truck and he neither stopped the truck nor inspected it. Specialist Divis did not see the truck again that day. His hours of duty were 1200 hours to 2300 hours." [Prosecution Exhibit 1.]

In addition, a Specialist Fourth Class, at about 1330 hours on October 26, 1967, observed the accused drive A Troop's three-quarter-ton truck, bumper marking A43, from the area of the mess hall and park it behind the E-7 and E-8 hut. The accused and Sergeant Jackson left the truck, entered the hut, and emerged a few minutes later carrying a space heater which they loaded on the truck. The two then drove the truck to the enlisted men's latrine. Sergeant Jackson entered the E-6 hut and the accused backed the truck up to the latrine. The witness then left the area and did not see anything further. According to this witness, the accused resides in the E-7 and E-8 hut and Sergeant Jackson lives in the E-6 hut. He did not see a space heater removed from the latrine.

Sergeant Jackson, testifying under a grant of immunity, stated that he was with the accused on the afternoon of October 26th. All he could recall of that day was having been with Lutgert in the club that afternoon and with him in the truck at the camp gate at about 1420 hours. The witness did not remember moving any space heaters or being at the orphanage.

The operator of the Niagara Club in Unchon-ni, where the two space heaters were ultimately found, testified that she obtained them from the orphanage. She had been told that they would be there by the accused's girl friend. She never spoke with the accused about them.

In his charge to the court on specification 2, the law officer instructed that they must find that "the accused *wrongfully obtained*" the Government truck, with "the intent temporarily to deprive the United States Government of the use and benefit of the property or to appropriate it to his own use." (Emphasis supplied.)

The Government, at this level, argued that the truck was obtained by the accused through a false representation since, when obtaining authorization to go to the orphanage, he did not disclose his additional nefarious purpose, and that the use of the truck as an instrumentality in effectuating the larceny of the heaters cannot be construed as other than an unauthorized use of a personal or private nature.

The defense contended that there was no evidence of a fraudulent misrepresentation at the time authorization to use the vehicle to go to the orphanage was obtained, since the record is silent as to what was said as to the purpose and scope of the trip. Inasmuch as the accused's squadron carried on extensive activity at the orphanage, defense counsel asserted, Lutgert might have been *ordered* to go to the orphanage by superior authority. In point of fact, according to defense counsel, the Government's evidence reflected that the accused did go to the orphanage as that was where the heaters were obtained. There is no evidence that he deviated en route.

We believe that the defense position must prevail in this case. As the law officer instructed the court, the Government bore the burden to prove beyond a reasonable doubt that the accused unlawfully obtained the truck with the intent temporarily to deprive the owner of the use and benefit of the property or, with the intent, to appropriate it to his own use.

When the truck was dispatched to the accused he had a trip ticket signed by the authorized person of the day, the Staff Duty Officer. The latter did not testify and the ticket is not in evidence. However, according to the stipulation of fact, the purpose of the trip was to go to the orphanage in Unchon-ni, a not unusual destination in light of the squadron's activities. The accused was seen to drive the truck through the camp gate and turn in the direction of the village of Unchon-ni. What was to be accomplished at the orphanage is unknown but it is not unreasonable to assume that the Lieutenant, prior to signing the trip ticket, made some inquiry and was satisfied with the reply. However, the local situation might have been such that no specific reason was required. In such an event the Lieutenant, even had he been called as a witness, could not have added anything of value to the Government's evidence.

As a general rule the obtaining of property from the possession of another is wrongful if the obtaining is by false pretense. The pretense must be in fact false when made and when the property is obtained, and it must be knowingly false in the sense that it is made without an honest belief in its truth. Manual for Courts-Martial, United States, 1951, paragraphs 200*a* (4) and (5). There is in this record no evidence that the representation to the Lieutenant was false. The truck was seen to leave the camp and turn toward the village where the orphanage was located and the heaters were later picked up at the orphanage. If the accused had no authorized business at the orphanage or deviated en route, the record does not so reflect.

That does not end the matter, however, for once having gained lawful possession of the property, one may thereafter, by converting it to his own use, be guilty of the charged offense. Manual, supra, paragraph 200*b*; United States v O'Brien, 3 USCMA 325, 12 CMR 81; United States v Greenfeather, 13 USCMA 151, 32 CMR 151. As stated in the Manual, supra, paragraph 200*a*(2):

". . . A withholding may arise . . . as a result of . . . devoting property to a use not authorized by its owner."

But see United States v Sicley, 6 USCMA 402, 20 CMR 118.

The issue presented in this case was squarely before the board of review in CM 296630, United States v Siedentop, 58 BR 191 (1946). Siedentop, tried under Article of War 96, 10 USC (1940 ed) § 1568 (the general article), was shown to have conspired with several Moroccan civilians and a Mr. MacDonald, an aircraft pilot, to illegally import gold into Morocco utilizing regular Army air schedules. MacDonald was to take money on his regular flights to other countries and while there exchange the currency for gold and bring the same on the return flight. There, the board of review held, at page 197:

". . . It is apparent from the evidence that under this conspiracy the aircraft involved was not to be diverted from Government use but while being used on authorized Government business a small quantity of gold was to be transported aboard it. So, the question is whether the offense of wrongfully and without authority using Army aircraft for personal gain is committed when in fact the aircraft actually performs the official mission assigned to it and the private transaction incident to its authorized use does not divert it from its course or interfere with performance of its mission; that is, whether there can be both an authorized and an unauthorized use of Government property at one and the same time.

"The offense of wrongfully using another's property is referred to generically in military law as misapplication (MCM, 1928, par. 150*i*; CM 239304, *Stennis*, 25 BR 119. *Winthrop's Military Law and Precedents,* 2d Ed., 1920, p. 708). The offense of misapplication involves 'appropriation' of the use of property 'for the *personal* "benefit" of the offender; as where an officer or soldier makes use without authority of animals, vehicles, tools, etc., of the Government—whether or not specifically trusted to his charge—for the purposes of himself or his family' (*Winthrop,* supra). According to Webster's New International Dictionary, 2d ed., to 'appropriate' is defined as 'to take to oneself *in exclusion of others*' and 'to set apart for, or assign to, a particular purpose of use *in exclusion of all others*' (italics added). Thus, as a matter of definition, unauthorized use or misapplication of property is the wrongful use of property to the *exclusion of all other uses*. We believe that this conclusion reached as a matter of definition is also sound as a matter of law inasmuch as we cannot concede that there may be both an authorized and an unauthorized use of property at one and the same time. The use must be one or the other; it cannot be both. In our opinion, the offense of unauthorized use or misapplication of property requires the *complete* diversion of the property from its authorized use. Accordingly, when a Government vehicle is used to perform and does perform the official mission assigned it without interference therewith and without diversion or deviation of the vehicle, any incidental transportation of private property aboard the vehicle without authority does not constitute the offense of wrongful use or misapplication of such vehicle."

Whether the offense be referred to as wrongful use or misapplication, it is clear that the Congress in enacting Article 121 eliminated the frequently subtle and confusing distinctions previously drawn between common-law larceny, embezzlement, and false pretenses. United States v Aldridge, 2 USCMA 330, 8 CMR 130; United States v Norris, 2 USCMA 236, 8 CMR 36; United States v Buck, 3 USCMA 341, 12 CMR 97.

In CM 307018, United States v Showalter, 60 BR 37 (1946), appellant was charged, *inter alia*, with converting to his own use a Government vehicle by transporting unauthorized civilians therein. He pleaded not guilty as charged but guilty to the unauthorized transportation of civilians in violation of AR 850–15. He was found guilty as charged. The board of review held, at page 44:

". . . Since it appears that in each instance accused was on an official mission, it cannot be said that he converted the vehicle to his own use (see CM 296630, *Seidentop* [sic]; CM 256706, *Siddon,* 36 BR 343; CM 252620, *Watterson,* 34 BR 101, 102). . . ."

The board found the evidence insufficient to sustain the charged offense but did approve a finding in accordance with his plea.

In ACM 7264, United States v Graham, 13 CMR 727, accused was charged with wrongful appropriation of a motor vehicle in violation of Article 121, Code, supra. The evidence reflected on two occasions he requested that the Government Motor Pool at an air base in Japan furnish him transportation to Tachikawa or to Tachikawa Air Base. Such transportation was to be used for official business only. At accused's request he was given a jeep and a driver. On each occasion the accused requested the driver to take him to a certain hotel located in the city. Upon arrival, the accused signed the trip ticket and dismissed the driver. Noting that not every deviation from an assigned route would constitute a violation of Article 121, the board said, at page 730:

"Accordingly, in the absence of evidence revealing a personal character of the use to which the government vehicles were put, if such be the case (see CM 330698, Bryan, 79 BR 137, 142), and while the evidence may raise a suspicion of possible wrongdoing, it is, we believe, insufficient to establish beyond 'reasonable doubt . . . every element of the offense' (MCM, 1951, par 74a (3)) here involved. We cannot affirm as it is axiomatic that a conviction cannot be based on 'suspicion, conjecture, and speculation' (US v O'Neal (No. 25), 1 USCMA 138, 143, 2 CMR 44, 49; US v Shull (No. 45), 1 USCMA 177, 180, 2 CMR 83, 86). Accordingly, the Board of Review finds the evidence insufficient in law to sustain the findings as to Additional Charge II and the specifications thereunder."

In light of the decisions in the above-cited cases, we believe that the evidence in this case is insufficient, as a matter of law, to sustain the findings of guilty of wrongful appropriation of a Government truck. As stated in United States v O'Neal, 1 USCMA 138, 143, 2 CMR 44:

". . . In any event, we suspect that it is one thing to 'speculate' in a situation of civil private law, and quite another and more serious one to do so in a criminal case with its *requirement of proof beyond a reasonable doubt.*" [Emphasis supplied.]

Accordingly, the decision of the board of review as to specification 2 is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence on the remaining specification alleging larceny of the space heaters[1] may be ordered.

Chief Judge QUINN and Judge DARDEN concur.

---

[1] The maximum imposable sentence for this offense is dishonorable discharge, total forfeitures, and confinement at hard labor for six months.