UNITED STATES, Appellee

v

MICHAEL TAYLOR, Private, U. S. Marine Corps, Appellant

21 USCMA 220, 44 CMR 274

No. 24,479

March 3, 1972

Lieutenant David C. Sellergren, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was Captain Michael J. Levin, USMCR.

Lieutenant Marion E. James, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was Commander Michael F. Fasanaro, Jr., JAGC, USN.

DUNCAN, Judge:

As his case reaches us, the appellant stands convicted of a single specification (specification 2, Charge II) alleging the wrongful appropriation of a Government truck, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. We granted review on the question of whether the evidence is legally sufficient to support the findings of guilty of specification 2, Charge II.

The facts are not in dispute. The record of trial reflects that Lieutenant Williams, while en route by automobile on New Highway 13 from Kin Village to Camp Schwab, Okinawa, observed a Government truck pulled off the side of the road facing south. The driver was the appellant. As Williams and his companions went by, the truck turned around and also proceeded north toward Camp Schwab, stopping to pick up a Marine on the way. Williams kept the truck, which was then behind him, in view to determine if it was returning to camp. When the vehicle turned off onto Old Highway 13, Williams temporarily lost sight of it as he turned around to go back. Several minutes later, he sighted the vehicle stopped alongside Old Highway 13. One of the occupants was outside. As Williams and one of his companions left their car to approach the Government truck, it was driven away. Williams next saw the truck as it was going up the hill toward Camp Schwab. When Williams arrived at the dispatcher's office, the truck was there. Williams entered the office and awakened the duty dispatcher. Williams acknowledged that both the Old and New Highway 13 led to Camp Schwab although the old road is one-half to three-quarters of a mile out of the way. He also testified, on cross-examination, that there is a dump along Old Highway 13.

Corporal Quinn, the duty dispatcher on the day in question, testified that after performing his preliminary duties he took a nap. He was awakened by Lieutenant Williams and asked whether he had given the appellant a trip ticket on the truck. He replied that he had. Quinn testified that the appellant was the duty driver that evening and at 4:30 p.m. Quinn had "logged him out on a master log with a trip ticket in case he did have any runs that night." Quinn did not send the appellant on a trip at any time that day. According to Quinn, a qualified mechanic may take a vehicle out for a road test, but ordinarily he would first inform "the MTC, the MTO or the Maintenance Chief, or the dispatcher." There is no prescribed route for a road test. The individual may pick his own as long as it is on a main highway. If a mechanic had come to him and wanted to take a vehicle off base for a road test Quinn would "have given him permission." The appellant never asked Quinn for permission to road test the vehicle.

The appellant testified that he was the duty driver on the day in question. He is also a truck driver and mechanic, and is qualified to road test vehicles. Because he had had trouble with the truck, transmission or clutch slippage, he decided to take it out for a road test. Taylor further stated that if anything was seriously wrong he wanted to deadline the truck and get another vehicle for the weekend. Since Corporal Quinn was asleep at the time, the appellant stated that he made no effort to ask permission to go. Appellant stated that he took Private First Class Butler, a newly arrived truck driver, along to acquaint him with the general area and, especially, the dump, the location of which Butler had to know. After leaving the base they proceeded along New Highway 13. At the first town Butler alighted to obtain some refreshments while the appellant went about one-half mile further and turned the vehicle around. Just prior to turning around he determined that the clutch was slipping. After picking Butler up, they continued toward Camp Schwab. Along the way, they turned off on the road to the dump to pinpoint its location for Butler. When they made a comfort stop, the appellant observed a car with

Lieutenant Williams and two warrant officers, all in civilian clothes, stopped behind him. Taylor stated that he thought nothing of it because "they were on liberty hours" and he knew of no reason they might want to speak with him. He drove away as they were walking toward the rear of the truck. He looked back, and they did not call or make any motions indicating they wanted him to stop. The appellant testified that "[t]hey just casually got out of the car. For all I know they just could have been, well, getting out, because right there as you go around this hill, it's a lake area." At most, the appellant drove the truck five and one-half miles from Camp Schwab.

The test to be applied in determining the sufficiency of the evidence is whether there is, in the █ record, some competent evidence from which the members of the court-martial, or the military judge in a trial by judge alone, could find, *beyond a reasonable doubt*, the existence of every element of the offense charged. It is axiomatic that a conviction cannot be sustained on the basis of suspicion or surmise. United States v Papenheim, 19 USCMA 203, 41 CMR 203 (1970), and cases cited at page 205. Cf. United States v Lyons, 11 USCMA 68, 28 CMR 292 (1959).

Among the elements necessary for conviction for wrongful appropriation are: "(a) That the accused wrongfully took, obtained, or withheld from the possession of the owner or of any other person the property described in the specification," and "(d) that the taking, obtaining, or withholding by the accused was with intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner." Paragraph 200*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

It cannot be denied that the appellant drove the truck off base but he had a trip ticket issued by █ the duty dispatcher. He had made no false pretense to obtain either the truck or the ticket.

222

United States v Lutgert, 18 USCMA 382, 40 CMR 94 (1969). Despite such circumstances, however, he could still be found guilty of the charged offense upon a showing that he thereafter wrongfully withheld the vehicle by utilizing · it for a personal venture. United States v O'Brien, 3 USCMA 325, 12 CMR 81 (1953); United States v Greenfeather, 13 USCMA 151, 32 CMR 151 (1962); cf. United States v Sluss, 14 USCMA 388, 34 CMR 168 (1964). The evidence reflects that appellant left the base in the truck without specific permission to do so from the duty dispatcher. His unrebutted stated purpose in doing so was to road test the vehicle because of a suspected malfunction, an activity for which he was qualified and which he had previously performed on other vehicles.

In United States v Sluss, supra, the accused was convicted for wrongful appropriation of an oxygen bottle. He had obtained the bottle from supply for use in an aircraft his unit was servicing. When it was determined that the bottle was not needed, he placed it in the trunk of his car to await an occasion when it would be needed in the future. His group had had difficulty in getting a trouble-free bottle and regulator and Sluss believed he was lucky to get a good unit. On cross-examination, Sluss admitted he had no specific authority to take the bottle from the flight line. There was testimony to the effect that standing operating procedure required that unused equipment be brought back to where it belonged.

In reversing Sluss' conviction for wrongful appropriation, we said:

"Unquestionably, the evidence shows a withholding of Government equipment by the accused. Wrongful appropriation, however, requires more than that. The act of withholding must be accompanied by an 'intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner.' Article 121(a)(2), Uniform Code of Military Justice, 10 USC § 921;

United States v Roark, 12 USCMA 478, 31 CMR 64 [1961]; United States v Norris, 2 USCMA 236, 8 CMR 36 [1953]. The record of trial demonstrates that the accused's intention was merely to facilitate maintenance work for the Government, and that the evidence is legally insufficient to support the findings of guilty. United States v Peterson, 1 USCMA 317, 3 CMR 51 [1952]; United States v Lyons, 11 USCMA 68, 28 CMR 292 [1959].

". . . Even if the evidence as to standing operating procedure be construed as a directive against removal, the evidence, in a light most favorable to the Government, still shows no more than a violation of an order. Violation of an order or regulation is not a violation of Article 121. United States v Huggins, 12 USCMA 686, 689, 31 CMR 272 [1962]." [*Ibid.*, at pages 390, 391.]

In this case, as in *Sluss*, the appellant's unrebutted testimony reflects that he took the truck off base in order "to facilitate maintenance work for the Government." There is no evidence that a specific notation or document was required for a mechanic's road test. Had the appellant notified the duty dispatcher, there would have been no objection. Corporal Quinn, however, admittedly was taking a nap. In any event the evidence of the appellant's departure from the base, construed in a light most favorable to the Government, shows no more than a violation of an order or regulation and not a violation of Article 121. United States v Sluss, supra.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. The Charge and its specification is ordered dismissed.

Chief Judge DARDEN and Judge QUINN concur.