*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEWART, and COGLEY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Cody J. KELLY**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202000031**

Decided: 29 April 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Glen R. Hines (arraignment)
Keaton H. Harrell (trial)

Sentence adjudged 2 October 2019 by a general court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for eight months,[1] and a bad-conduct discharge.

For Appellant:
*Captain Jeremiah J. Sullivan, JAGC, USN*

---

[1] The convening authority suspended confinement in excess of six months pursuant to a plea agreement.

For Appellee:
*Lieutenant Commander Jeffrey S. Marden, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

Judge COGLEY delivered the opinion of the Court, in which Senior Judge GASTON and Judge STEWART joined.

_____

**This opinion does not serve as binding precedent under NMCCA Rule of Appellate Procedure 30.2(a).**

_____

COGLEY, Judge:

Appellant was convicted, consistent with his pleas, of violating a lawful general order for failing to register privately-owned firearms he kept in his on-base quarters, wrongful disposition of military property, two specifications of wrongful appropriation of military property, and two specifications of obstruction of justice in violation of Articles 92, 108, 121, and 134 of the Uniform Code of Military Justice [UCMJ].[2]

After Appellant raised no Assignments of Error [AOE], this Court specified the following AOE:

> ***In light of the specific intent required by Article 121(a)(2), UCMJ, is there a substantial basis in law or fact to question Appellant's guilty plea to wrongful appropriation as alleged in Charge III, Specification 1, where Appellant stated during the providence inquiry that his intent in taking possession of two radios belonging to his unit was to fix and return them in order to "look useful" to the unit?***
>
> ***See United States v. Taylor, 44 C.M.R. 274 (C.M.A. 1972); United States v. McGowan, 41 M.J. 406 (C.A.A.F. 1995).***

Appellant requests that we answer that question in the affirmative, dismiss the specification at issue and reassess the sentence.

---

[2] 10 U.S.C. §§ 892, 908, 921, 934.

We find merit in the specified AOE and set aside and dismiss Specification 1 of Charge III in our decretal paragraph. We affirm the remaining findings and, upon reassessment, affirm the sentence.

## I. BACKGROUND

The events that are the subject of the charges in this case came to light following a February 2018 command investigation by the 8th Marine Regiment, 2nd Marine Division, into four missing radios from the communications section. The investigation, which included an extensive search by members of the unit, including Appellant, failed to locate the missing radios. However, on 5 June 2018, another Marine recognized two of the missing radios in the garage of Appellant's on-base home, took pictures of the serial numbers with his cell phone, and reported his discovery to the command.

Appellant learned of the report from a master sergeant in his chain of command, who called to tell him the command was aware he had the radios. Worried that military police might already be at his house, Appellant parked some distance away and snuck into his garage to retrieve the two radios and four radio pouches. He and his wife then drove to a nearby nature trail and Appellant discarded the two radios and four radio pouches in the woods.[3] The next morning, having changed his mind about the hiding place, he retrieved the two radios and four pouches from the woods and discarded them in a trash can.

A search of Appellant's residence revealed a significant amount of other military property in Appellant's possession, as well as five unregistered weapons, but did not turn up the radios or the pouches. The additional items of military property included two Toughbook laptops, nine Solar Portable Alternative Communications Energy System [SPACES] kits, one ceiling mount projector, seven SPACES solar panels, one SPACES Starpower module and sling, nine Motorola batteries, and one component adaptor. The total value of all of the military property found in Appellant's possession, was approximately $50,000.

Appellant admitted to a Naval Criminal Investigative Service [NCIS] agent that when he learned his command was aware he had two of the four missing radios, he hid the radios and the pouches in the woods near his house. When NCIS agents searched the location where he left the radios in the woods, they were not there, though an antenna was left behind. Appel-

---

[3] There is no clear explanation on the limited record why Appellant had only two radios, but four radio pouches. Appellant denied taking the other two missing radios.

lant then stated that he might have returned to the woods and moved the radios and pouches to a trash can. A search of the trash cans near Appellant's house revealed the two radios and four pouches.

Pursuant to a plea agreement, Appellant pleaded guilty to violating a lawful general order by having five unregistered, privately-owned firearms in his on-base home; wrongful disposition of military property by disposing of two radios and four radio pouches in a trash can; wrongful appropriation of military property for wrongfully appropriating the two radios and four radio pouches; wrongful appropriation of the above-described other military property found in his house; and obstruction of justice for concealing the two radios and the four radio pouches in the woods and later placing them in a trash can.

As he had previously stated to NCIS, Appellant maintained during the military judge's providence inquiry, and again during his unsworn statement, that he had only taken the two radios home in order to repair an "IP Trunking" issue to make himself look useful to his unit. Appellant is a computer technician, but stated he had been assigned as a radio technician because computer technicians "don't really do their job as much."[4] He explained that he had recently joined the unit and wanted to do something to make himself look useful. He stated he had trouble trying to figure out how to fix the problem with the radios and took them home because he wanted to continue working on them past his normal working hours.

## II. DISCUSSION

### A. Charge III, Specification 1

We review a military judge's decision to accept a guilty plea for abuse of discretion.[5] Guilty pleas will not be set aside on appeal unless there is "a substantial basis in law and fact for questioning [such pleas]."[6] "A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea—an area in which we afford significant deference."[7] A military judge may not accept a guilty plea unless he determines there is a sufficient factual basis for every element of the offenses to

[4] R. at 89.

[5] *United States v. Simmons*, 63 M.J. 89, 92 (C.A.A.F. 2006).

[6] *United States v. Phillippe*, 63 M.J. 307, 309 (C.A.A.F. 2006).

[7] *United States v. Caldwell*, 72 M.J. 137, 144 (C.A.A.F. 2013) (quoting *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)).

which the accused pleaded guilty.[8] "In determining on appeal whether there is a substantial inconsistency, this Court considers the 'full context' of the plea inquiry, including Appellant's stipulation of fact."[9] A providence inquiry into a guilty plea must establish that the accused believes and admits he is guilty of the offense, and the factual circumstances admitted by the accused must objectively support the guilty plea.[10] "[I]n guilty-plea cases the quantum of proof is less than that required at a contested trial."[11] However, "mere conclusions of law recited by an accused . . . are insufficient to provide a factual basis for a guilty plea."[12]

While we review a judge's decision to accept a guilty plea for an abuse of discretion, we review questions of law arising from the guilty plea de novo.[13]

> [I]t is possible to have a factually supportable plea, yet still have a substantial basis in law for questioning it. This might occur where an accused knowingly admits facts that meet all the elements of an offense, but nonetheless is not advised of an available defense or states matters inconsistent with the plea that are not resolved by the military judge.[14]

"[I]t is long established as a matter of military law that a wrongful taking alone does not constitute wrongful appropriation under Article 121."[15] "This military statute also requires that the wrongful taking be accompanied by an 'intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner.'"[16] "A simple intent to interfere with lawful possession of the Government will not suffice where it is also shown that a servicemember intended the property to be used 'wholly' for a 'legitimate' government

---

[8] *Simmons*, 63 M.J. at 92. *See also* Rule for Courts-Martial 910(e) Discussion.

[9] *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011).

[10] *United States v. Garcia,* 44 M.J. 496, 497-98 (C.A.A.F. 1996).

[11] *United States v. Pinero*, 60 M.J. 31, 33 (C.A.A.F. 2004).

[12] *United States v. Jordan,* 57 M.J. 236, 239 (C.A.A.F. 2002) (quoting *United States v. Outhier,* 45 M.J. 326, 331 (C.A.A.F. 1996)).

[13] *Inabinette,* 66 M.J. at 322.

[14] *Id.*

[15] *United States v. McGowan*, 41 M.J. 406, 411 (C.A.A.F. 1995) (citing *United States v. Norris,* 8 C.M.R. 36 (C.M.A. 1953)).

[16] *Id.* (quoting Article 121(a)(2), UCMJ).

purpose."[17] Thus, "an accused must intend to deprive the Government or a unit thereof of more than mere possession of its property in order to be guilty of wrongful appropriation."[18]

In *United States v. Taylor,* the Court of Military Appeals found that where "[t]he record of trial demonstrates the accused's intention was merely to facilitate maintenance work for the Government," the "evidence is legally insufficient to support the findings of guilty" to wrongful appropriation.[19] The *Taylor* case involved a qualified mechanic who had driven a vehicle off base at Camp Schwab, Okinawa, without express permission.[20] He was performing a road test because the vehicle was having either a transmission or a clutch malfunction.[21] The dispatcher, who would normally have been the one to give permission for that specific trip, had issued the appellant a "trip ticket," but was taking a nap when the appellant actually left.[22] The court reasoned that "even if the evidence as to standard operating procedure be construed as a directive against removal, the evidence, in a light most favorable to the Government, still shows no more than a violation of an order. Violation of an order or regulation is not a violation of Article 121."[23]

The Court of Appeals for the Armed Forces [CAAF] reached a similar conclusion in *United States v. McGowan.*[24] The court set aside the appellant's guilty plea to wrongful appropriation where he repaired and modified a disabled vehicle in order to transport wounded Marines during the First Gulf War.[25]

This case bears significant similarity to both *McGowan* and *Taylor*, as Appellant stated multiple times during the providence inquiry that he took the radios home in order to repair them:

---

[17] *Id.* at 412 (citing *United States v. Sluss*, 34 C.M.R. 168, 171 (C.M.A. 1964)).

[18] *Id.* at 412 (citations omitted).

[19] *United States v. Taylor,* 44 C.M.R. 274, 277 (C.M.A. 1972) (citing *United States v. Peterson*, 3 C.M.R. 51 (C.M.A. 1952); *United States v. Lyons*, 28 C.M.R. 292 (C.M.A. 1959)).

[20] *Id.* at 275.

[21] *Id.*

[22] *Id.*

[23] *Id.* at 277 (citing *United States v. Huggins*, 31 C.M.R. 272 (1962)).

[24] *McGowan,* 41 M.J. at 406.

[25] *Id.* at 411.

MJ: Who did you wrongfully appropriate this property for?

ACC: I appropriated it for myself to work on, sir.

MJ: And you—did you say that that was in an effort to make yourself look better?

ACC: Yes, sir. I was getting obsessed with trying to figure out that problem that I mentioned, the trunking issue. I did see that before in my previous unit, and I didn't know if we had ever figured it out. And I wasn't in, like, complete contact with them at the time, so I was trying to figure it out, like how to fix this.

MJ: And what did you intend to do with the property when you took it?

ACC: To—basically, sir, just trying to figure out the issue and make it go away.

MJ: I understand that with regard to the two radios, but what about the four radio pouches?

ACC: They were just with the radios at the time. I used them to carry out the radios. They were just in them.

MJ: Did you intend to wrongfully appropriate the radios and radio pouches?

ACC: Yes.

MJ: Did you intend to return it?

ACC: Yes, sir.

MJ: Did you in fact return it?

ACC: No, I did not.

MJ: Did you intend to temporarily deprive the United States of the use and benefit of this property?

ACC: Yes, sir.

MJ: Did you intend temporarily to appropriate the property to your own use or the use of someone other than the owner?

ACC: I didn't use them per se, sir. All I did was work on them, trying to get them to work properly again.

MJ: Well, I understand you didn't use the radios for your own purposes, such as communicating with somebody

7

with the other radios. But by "use" in that fashion, what I mean is did you have any authority to take the radios home to work on them?

ACC: No, sir.

MJ: And you did that, as you stated, for the purposes of making yourself look better at work?

ACC: Yes, sir.

MJ: So you would agree that using them in that fashion— and again, by "using" them, I am referring to taking them home to work on them. So by doing so, did you intend to temporarily appropriate the property to your own use?

ACC: Yes, sir.

MJ: And also in doing so, did you intend to temporarily deprive the United States of the use and benefit of the property?

ACC: Yes, sir.

MJ: Did you have any legal justification or excuse for taking this property?

ACC: No, sir.

MJ: Did you know your conduct was wrongful?

ACC: Yes, sir.

MJ: Do you believe and admit your conduct was wrongful?

ACC: Yes, sir.

MJ: Did anyone force or coerce you into taking this property?

ACC: No, sir.

MJ: Could you have avoided taking this property if you had wanted to?

ACC: Yes, sir.

MJ: Do you believe you have any legal defense to this offense?

ACC:   No, sir.[26]

The military judge seems to have recognized the potential issue raised by Appellant's statement that he took the radios home in order to try to fix them to "look better at work." However, rather than explore that line of inquiry further, the military judge focused on whether Appellant believed he was depriving the government of the "use" of the radios by taking them home to work on without authority. This amounts to no more than an orders violation of the sort our superior court rejected in *Taylor*. Thus, when the military judge later asked whether Appellant believed he had a legal defense to the offense and he stated, "No, sir," this was a "mere conclusion[] of law."[27] The statements Appellant had been communicating throughout the inquiry were raising a possible legal defense. While Appellant's behavior in attempting to hide the radios, having four radio pouches and only two radios, and the amount of time that he possessed the radios without actually repairing or returning them may give cause to doubt the accuracy of Appellant's explanation, nothing raised during the providence inquiry or in the stipulation of fact contradicted that Appellant's intent was, as he stated, to repair the radios to make himself look useful to the unit.

At a minimum, this was a matter inconsistent with the guilty plea and should have been clearly resolved by the military judge. We find that the factual circumstances admitted by Appellant do not objectively support the guilty plea, that there is a substantial basis in law for questioning it, and that the military judge abused his discretion in accepting it. As a result, we set aside and dismiss Specification 1 of Charge III in our decretal paragraph.

**B. Sentence Reassessment**

Having set aside and dismissed Appellant's conviction for wrongful appropriation under Specification 1 of Charge III, we must determine if we are able to reassess Appellant's sentence. We have "broad discretion" when reassessing sentences.[28] However, we can only reassess a sentence if we are confident "that, absent any error, the sentence adjudged would have been of at least a certain severity . . . ."[29] A reassessed sentence must not only "be

---

[26] R. at 95-98.

[27] *See Jordan,* 57 M.J. at 239.

[28] *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013).

[29] *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

purged of prejudicial error [but] also must be 'appropriate' for the offense[s] involved."[30]

In determining whether to reassess a sentence or to order a sentencing rehearing, we consider the factors set forth by CAAF in *United States v. Winckelmann*: (1) whether there has been a dramatic change in the penalty landscape and exposure; (2) the forum of the court-martial; (3) whether the remaining offenses capture the gravamen of the criminal conduct and whether significant or aggravating circumstances remain admissible and relevant; and (4) whether the remaining offenses are those the appellate court has experience and familiarity with and "can reliably determine what sentence would have been imposed at trial."[31]

Considering all of the *Winckelmann* factors and the circumstances of this case, we find that we can reassess the sentence and it is appropriate for us to do so. The penalty landscape is relatively unchanged, with the maximum confinement being reduced from 18 years[32] to 17 years and six months, while the adjudged sentence only included eight months' confinement (further reduced by operation of the plea agreement suspending confinement in excess of six months). The remaining offenses capture the gravamen of the criminal conduct and aggravating circumstances.

We can confidently and reliably determine that, absent the error, Appellant's sentence would still include reduction to E-1, confinement for eight months, and a bad-conduct discharge. We find this sentence to be an appropriate punishment for the remaining convictions and this offender—thus satisfying the requirement for a reassessed sentence both purged of error and appropriate.[33]

### III. CONCLUSION

Specification 1 of Charge III is **SET ASIDE** and **DISMISSED**. The remaining findings and the sentence as reassessed are **AFFIRMED**.

Senior Judge GASTON and Judge STEWART concur.

---

[30] *Id.*

[31] *Winckelmann*, 73 M.J. at 15-16.

[32] The military judge merged two of the specifications for sentencing.

[33] *Sales*, 22 M.J. at 308.



FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court