**UNITED STATES, Appellant,**

v.

**Sergeant First Class James M. McCLEL-LAND, 437–74–2044, United States Army, Appellee.**

**ACMR Misc. 8702779.**

U.S. Army Court of Military Review.

22 March 1988.

For Appellant: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC, Captain Eva M. Novak, JAGC (on brief).

For Appellee: Colonel John T. Edwards, JAGC, Lieutenant Colonel Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC, Captain Stephanie C. Spahn, JAGC (on brief).

Before DeFORD, KANE and SMITH, Appellate Military Judges.

### OPINION OF THE COURT

DeFORD, Senior Judge:

This case is before the court pursuant to Article 62, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 862 (Supp. III 1985) and Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 908(b) [hereinafter M.C.M. and R.C.M. respectively], for consideration of the government's interlocutory appeal from a ruling of the trial judge suppressing appellee's oral confession and oral and written pretrial statements made by members of his family. The judge ruled *inter alia* [1] that appellee's oral confession of

---

1. The judge also ruled due process mandated suppression. This ruling was based on the fact that the Army, over the Armed Forces Network, urged persons involved in familial abuse to seek Army help. Notwithstanding the Army's promise to give assistance, Army practice and regula-

tions focus on prosecution. We cannot, on the present record, uphold this basis for suppression. There is no evidence of record that appellant or his wife ever saw or heard the advertisements. Nor is there evidence that the advertisements served as a causitive factor inducing the

child sexual abuse was taken in violation of Article 31, UCMJ, and that subsequent written and oral statements made by family members were derivative of his confession and inadmissible. We sustain the trial judge's ruling in part.

## I

The appellee was charged and arraigned before a general court-martial sitting in Kaiserslautern, Federal Republic of Germany, with four specifications alleging sodomy and indecent acts with his adopted daughter, M, a female child under the age of sixteen years, in violation of Articles 125 and 134, UCMJ, 10 U.S.C. §§ 925 and 934 (1982).

At a pretrial hearing, the trial defense counsel moved *in limine* to suppress the appellee's oral confession and to suppress the oral and written statements given to the Army Criminal Investigation Command (CID) by appellee's wife, his daughter K, and his daughter M, the alleged victim.

The government offered the testimony of appellee's wife and daughter, K. Both appeared pursuant to subpoena with counsel, claimed a privilege under German law, and refused to testify. The alleged victim did not respond to the subpoenas. The children M and K had been staying with their grandmother, Mrs. K, in Texas. Mrs. K overheard the girls talking about the appellee's acts with M and after questioning, Mrs. K was satisfied that M had been for some time the victim of appellee's sexual abuse. She informed appellee's wife in Germany of this information by telephone. Mrs. McClelland called the psychiatric clinic at the 13th General Hospital, Heidelberg, Germany, and described the problem as child sexual abuse or words to that effect. A Sergeant Whitaker received the call and advised her that she needed to talk with the Social Services Department.

Sergeant Whitaker apparently informed the Social Services Clinic that a joint ap-

pointment was requested. Major Niemeyer, the clinic director, made an appointment for the couple on 10 July 1987. Major Niemeyer testified that he was vaguely aware that some sexual maltreatment had occurred between the appellee and one of his daughters and that the information had surfaced while the girl was in the United States and been relayed to the child's mother in Germany. On 10 July 1987 the appellee and his wife, believing their discussion was confidential, consulted with Major Niemeyer. Mrs. McClelland advised the major that her daughter had made allegations of inappropriate sexual behavior. Major Niemeyer asked appellee about the problem and appellee replied that in approximately 1980 he had fondled his daughter's genitals. Major Niemeyer did not pursue the matter further and suggested to appellee that he seek legal counsel.[2] Pursuant to a perceived regulatory requirement, he then notified the CID of the appellee's confession. As a direct consequence of the confession CID, who had no prior notice of this criminal allegation, interviewed and took a sworn statement from appellee's wife in Heidelberg, Germany. From this statement CID agents at Fort Hood, Texas, located M and K at the home of their grandmother in Texas and acquired oral and sworn statements from the girls. In addition, M was reinterviewed by the CID in Germany and a second statement was obtained. These written and oral pretrial statements support the allegations contained in the charges and specifications.

The trial judge suppressed the appellee's pretrial confession to Major Niemeyer and the oral and written statements of his family members as evidence derivative of Major Niemeyer's violation of the appellee's Article 31, UCMJ, rights.

## II

■ Article 62(a)(1)[3], UCMJ, authorizes the government to "appeal an order or

---

appellant or his wife to seek assistance from Army authorities. Such evidence would be necessary to consider the issue.

**2.** Major Niemeyer terminated the initial interview but subsequently met with the parties on several later occasions.

**3.** In a trial by court-martial in which a military judge presides and in which a punitive dis-

ruling of the military judge which terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material to the proceeding." There is no question that the issue appealed is proper as the ruling in question excluded evidence that was substantial proof of a fact material to the proceedings. Furthermore, the government's appeal was perfected within the time requirements set forth in the statute and the Manual Rule. *See* Article 62, UCMJ, R.C.M. 908. Consequently the case is properly before us for decision.

When the government appeals a decision of the trial judge suppressing evidence, this court may act only with respect to matters of law. UCMJ, Art. 62(b). Where, as here, the trial judge's findings are based upon specific findings of fact, this court may reverse the trial court's ruling only if its factual findings were erroneous as a matter of law. *United States v. Burris*, 21 M.J. 140 (C.M.A.1985); *United States v. Austin*, 21 M.J. 592 (A.C.M.R.1985). A ruling is "erroneous as a matter of law" when the factual finding upon which it is based is unsupported by any substantial evidence or when that finding is against the clear weight of the evidence. *Burris*, 21 M.J. at 144; *Austin*, 21 M.J. at 596, citing *Shapiro v. Rubens* 166 F.2d 659 (7th Cir.1948). *See also United States v. Bradford*, 25 M.J. 181, 184 (C.M.A.1987). This court may not retry the issues of fact nor supplant the trial court's ruling with that of the appellate court.

## III

Article 31(b), UCMJ, provides, in part:

No person subject to this chapter may interrogate or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and

that any statement made by him may be used as evidence against him in a trial by courts-martial.

Construction of the foregoing provision has limited its application essentially to inquiries which contain a degree of officiality in the questioning of an accused or suspect. *United States v. Duga*, 10 M.J. 206 (C.M.A. 1981), citing *United States v. Gibson*, 14 C.M.R. 164 (C.M.A.1954). Such a warning is a precautionary measure introduced for the purpose of counteracting the presence of confinement, or other circumstances of "presumptive coercion implicit in military rank, discipline and superiority" which might operate to deprive an accused of his free election to speak or remain silent. *Gibson*, 14 C.M.R. at 173 (Brosman, J., concurring).

In *Duga*, the court fashioned a test to determine whether the article applies only to situations in which because of rank, duty, or other similar relationships there might be subtle pressures on a suspect to respond to an inquiry. That test includes:

(1) Whether a questioner subject to the code was acting in an official capacity in his inquiry or only had a personal motivation; and (2) whether the person questioned perceived that the inquiry involved more than a casual conversation.

As that court stated "Unless both prerequisites are met, Art. 31(b) does not apply." *Duga*, 10 M.J. at 210.

Military Rule of Evidence 305 provides in part:

(c) A person subject to the code who is required to give warnings under Article 31 may not interrogate or request any statement from an accused or a person suspected of an offense without first:

(1) informing the accused or suspect of the nature of the accusation

(2) advising the accused or suspect that the accused or suspect has the right to remain silent; and

charge may be adjudged, the United States may appeal an order or ruling of the military judge which terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact mate-

rial in the proceeding. However, the United States may not appeal an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification.

(3) advising the accused or suspect that any statement made may be used as evidence against the accused or suspect in a trial by courts-martial.

Furthermore, violations of Mil.R.Evid. 305 are treated under Mil.R.Evid. 304[4] and are generally inadmissible subject to the exceptions set forth in Mil.R.Evid. 304(b)(2) and (3).

 Applying the foregoing principles to the facts of record we note that the telephone call made to Sergeant Whitaker by Mrs. McClelland generally outlined the nature of the couple's allegations. Sergeant Whitaker did not report the matter to CID but merely relayed the information of Major Niemeyer, the Director of the Social Services Department. Major Niemeyer was aware of a requirement of Army Regulations which required him to report allegations of child abuse to military authorities. We believe that any reasonable person given the same information would have concluded that the appellee was suspected of having committed a criminal offense. Major Niemeyer met with the appellee and his wife on 10 July 1987. Mrs. McClelland outlined the allegation given to her by her mother. Major Niemeyer, without benefit of an Article 31, UCMJ, warning, turned to the appellee and asked what happened. Appellee, in response to these questions, replied that some years past, in approximately 1980, he had removed his daughter's pants and fondled her genitals. At this point Major Niemeyer advised the appellee: that because this incident may be a UCMJ violation that he was obligated to call the CID; that because of the serious legal ramifications, it was unwise to talk further about the McClelland's problem; and that appellee might want to seek legal counsel. Major Niemeyer subsequently notified CID and an investigation was vigorously pursued as a direct consequence of his information.

The trial judge held that Major Niemeyer was not acting in the scope of assisting the family but rather as an investigator for the child advocacy council seeking a criminal admission or confession. We agree with this aspect of his findings. Clearly Major Niemeyer was acting in an official capacity in his inquiry and not from any personal motivation. Thus, the first test set forth in *Duga* is satisfied. With regard to the second test, the record and inferences to be drawn therefrom establish that the appellee and wife had at least temporarily reconciled their differences when Mrs. McClelland sought an appointment from military authorities. The appellee's admission given to Major Niemeyer apparently did not begin to cover the entire scope of his wrongful acts. Consequently, it appears that his participation could be described at

---

**4. RULE 304. CONFESSIONS AND ADMISSIONS**

(a) *General rule.* Except as provided in subsection (b), an involuntary statement or any derivative evidence therefrom may not be received in evidence against an accused who made the statement if the accused makes a timely motion to suppress or an objection to the evidence under this rule.

(b) *Exceptions.*

(1) Where the statement is involuntary only in terms of noncompliance with the requirements concerning counsel under Mil.R.Evid. 305(d), 305(e), and 305(g), this rule does not prohibit use of the statement to impeach by contradiction the in-court testimony of the accused or the use of such statement in a later prosecution against the accused for perjury, false swearing, or the making of a false official statement.

(2) Evidence that was obtained as a result of an involuntary statement may be used when the evidence would have been obtained even if the involuntary statement had not been made.

(3) *Derivative evidence.* Evidence that is challenged under this rule as a derivative evidence may be admitted against the accused if the military judge finds by a preponderance of the evidence that the statement was made voluntarily, that the evidence was not obtained by use of the statement, or that the evidence would have been obtained even if the statement had not been made.

(c) *Definitions.* As used in these rules:

(1) *Confession.* A "confession" is an acknowledgment of guilt.

(2) *Admission.* An "admission" is a self-incriminating statement falling short of an acknowledgment of guilt, even if it was intended by its maker to be exculpatory.

(3) *Involuntary.* A statement is "involuntary" if it is obtained in violation of the self-incrimination privilege or due process clause of the Fifth Amendment to the Constitution of the United States, Article 31, or through the use of coercion, unlawful influence, or unlawful inducement.

best as reluctant cooperation. Major Niemeyer's attitude and function at this meeting, as we have noted, was that of an investigating Army official. The dichotomy of rank between the parties coupled with tenor of the meeting indicate that the appellee's perception of the event was considerably more than that of a casual conversation.

Accordingly, we find the provisions of Article 31(b) applicable in these circumstances. Major Niemeyer's failure to warn the appellee concerning the requirements of Article 31(b), UCMJ, warranted the military judge suppressing the confession made by the appellee on 10 July 1987 as well as any evidence derived from that confession.

## IV

■ As previously noted, the military judge suppressed the oral and written pretrial statements made by appellee's family as derivative evidence of Major Niemeyer's violations of the appellee's Article 31(b) rights.

As noted, Mil.R.Evid. 304(b) provides exceptions to the general rule that an involuntary statement or any evidence derivative therefrom may not be received in evidence if the accused makes a timely motion to suppress or an objection to the evidence. One exception provides that derivative evidence may be admitted "if the military judge finds by a preponderance of the evidence that the statement was made voluntarily, *that the evidence was not obtained by use of the statement* or that the evidence would be obtained even if the statement had not been made." Mil.R.Evid. 304(b)(3) (emphasis added).

Here the unwarned and involuntary statement given by the appellee was closely interwoven with the allegation made by appellee's wife. We are not in a position to disagree with the military judge's ruling which, in effect, held that he could not determine by a preponderance of the evidence that appellee's involuntary unwarned

confession did not result in the production of the derivative evidence in issue.

Government appellate counsel argue before us, as did the trial counsel before the trial court, that the trial judge's ruling with regard at least to the derivative evidence suppressed was error as a matter of law because the statement in question would have been inevitably discovered. They point to the requirements of Army Regulation 608–18, Personal Affairs: The Army Family Advocacy Program (18 Sep 1987), as requiring every soldier, employee, and member of the military community to report known and suspected cases of child abuse to appropriate military law enforcement agencies.[5] As we view the record of trial, the issue of inevitable discovery, because of the alleged reporting requirement, was never developed. Although the regulation was mentioned by counsel during trial the trial judge did not make any specific ruling on that issue. This court may not retry issues of fact nor supplant the trial court's ruling with that of the appellate court.

Accordingly, the military judge's ruling suppressing the appellee's confession and further suppressing as derivative evidence therefrom the pretrial oral and written statements of appellee's family members as a violation of Article 31(b), UCMJ, is sustained. The record of trial is remanded to the trial court for further proceedings not inconsistent with this opinion.

Judge KANE and Judge SMITH concur.

---

**5.** The regulation cited by government appellate counsel was not in effect on 10 July 1987, the date the appellee and his wife sought assistance from Major Niemeyer.