**UNITED STATES, Appellee,**

v.

**Private E1 Randall T. HUELSMAN, 511–86–0333, United States Army, Appellant.**

**ACMR 8800519.**

U.S. Army Court of Military Review.

27 Sept. 1988.

**512**

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Brian D. Bailey, Captain James E. O'Hare, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Gary L. Hausken, JAGC, Captain Patrick D. O'Hare, JAGC (on brief).

Before COKER, GILLEY, and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT

COKER, Senior Judge:

Appellant was tried by a military judge sitting as a general court-martial, and in accordance with his pleas was convicted of three specifications of making and uttering worthless checks and of drunk and disorderly conduct in violation of Articles 123a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 923a and 934 (1982) [hereinafter UCMJ]. The checks were payable to the United States Treasurer in the amounts of $540.00, $450.00, and $500.00. Further, in accordance with his pleas, appellant was found not guilty of distributing thirty pounds of marijuana, possession of twenty pounds of marijuana with the intent to distribute it, both in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, and of ten additional bad check specifications. He was sentenced to a bad-conduct discharge, confinement for twelve months, and forfeiture of $300.00 pay per month for twelve months. The convening authority approved the sentence, but suspended confinement in excess of nine months pursuant to a pretrial agreement.

Before this court appellant argues, as he did at trial, that his confession concerning the possession and distribution of marijuana was inadmissible as evidence in aggravation of sentence. We agree.[1] The record of trial is not entirely clear as to the circumstances surrounding appellant's confession. In order to prevent any misunderstanding, the court will exercise its authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c) in making findings of fact.[2]

Special Agent (SA) G of the Criminal Investigation Command (CID) questioned appellant concerning the bad check offenses. Prior to the interrogation, complete and proper advice under Article 31(b), UCMJ, 10 U.S.C. § 831(b), was given to appellant by G, but only as to the offense of "larceny by uttering worthless checks." Appellant indicated that he understood his rights to remain silent and to request the assistance of counsel. He waived these rights in writing, and willingly discussed the offenses with G. Appellant admitted writing the checks to the government even though he knew there was no money in his

---

1. This error affects only the sentencing portion of the trial. No error is alleged or found that affects the providence of appellant's pleas of guilty.

2. The Article provides in pertinent part: "In considering the record, [the court] may weigh the evidence, judge the credibility of witnesses, *and determine controverted questions of fact*, recognizing that the trial court saw and heard the witnesses." UCMJ art. 66. (emphasis added).

checking account. G then asked him why he wrote the checks; appellant explained that he owed money to people in Denver. G continued by asking why appellant owed the money and he answered that, "he owed them money for a situation with drugs."

At this point, G did not repeat or explain again any part of the Article 31(b) rights warning. She asked only a question to the effect, "You know you are still under rights advisement?" Appellant answered this question in the affirmative. The discussion then centered on appellant's conduct as a courier of large amounts of marijuana. At the completion of the discussion, G reduced appellant's statement to writing in a question and answer format, placed appellant under oath, and had appellant sign the statement. No further warning was given appellant prior to the preparation and signing of the written statement.

At trial, defense counsel moved to have the statement suppressed on the basis that it was taken in violation of Article 31(b), UCMJ, in that appellant had not been properly advised as to the nature of the offense of which he was suspected. Defense further argued that the statement was not admissible under Military Rule of Evidence 403 [3] in that its probative value was substantially outweighed by the degree of unfair prejudice. The military judge denied the motion and admitted the statement as evidence in aggravation during the presentencing hearing.

Under the United States Constitution, "No person ... shall be compelled in any criminal case to be a witness against himself." [4] On this concept are based the decisions of the United States Supreme Court that protect an accused from compelled self-incrimination. *See Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This protection is provided to members of the Armed Forces in Article 31(a), UCMJ: "No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to

which may tend to incriminate him." Yet, the provisions of Article 31, UCMJ, accord an accused much broader protection than that encompassed by the Fifth Amendment or articulated by the Supreme Court. For example, Article 31(b), UCMJ, provides in part, "No person subject to this chapter may interrogate or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation." *See* Mil.R. Evid. 305(c)(1). Article 31(d) provides that: "No statement obtained from any person in violation of this article ... may be received in evidence against him in a trial by court-martial." *See* Mil.R.Evid. 304(a), 305(a); *see also United States v. Jones*, 26 M.J. 353, 356 (C.M.A.1988). This exclusionary rule for violation of Article 31, UCMJ, is recognized by the government in this case; it contends, however, that a sufficient warning was given to appellant.

█ Neither the Court of Military Appeals nor this court requires or even expects a police officer to use the precision and expertise of an attorney in informing an accused of the nature of the offense of which he is suspected. *See, e.g., United States v. Johnson*, 43 C.M.R. 160, 164 (C.M.A.1971). The accused must be made aware, however, of the general nature of the allegation. The warning must include the area of suspicion and sufficiently orient the accused toward the circumstances surrounding the event. *United States v. Schultz*, 41 C.M.R. 31 (C.M.A.1970); *United States v. Reynolds*, 37 C.M.R. 23 (C.M.A.1966).

█ We find that the rights warning by G to appellant as to the offenses involving possession and distribution of marijuana violated Article 31(b), UCMJ, and, therefore, his statement concerning those offenses was inadmissible at his trial by court-martial. The court recognizes that appellant's case is factually distinguishable from the cases cited by the government; however, the principle of law involved and the mandate of Article 31 are not. Initial-

---

**3.** Manual for Courts–Martial, United States, 1984 [hereinafter M.C.M., 1984].

**4.** U.S. Const. amend. V.

ly, the questions by G were innocent[5] and relevant to an interrogation concerning appellant's issuing bad checks. But, once the appellant revealed his involvement in a "drug situation," he became a suspect of an Article 112a, UCMJ, offense. At that point, Article 31 mandated that appellant be advised in accordance with Article 31(a) and (b). *United States v. Leiffer,* 13 M.J. 337, 344 (C.M.A.1982). That special agent G was aware of this requirement is demonstrated by her interrogation and question as noted above. The continued discussion of the "suspected" drug offenses was neither spontaneous nor the result of "innocent" questions.

It is in this regard that the case before the court differs from the previously cited cases. Initially, G had no knowledge of the drug activities of appellant, nor did any other government agent have such knowledge. In other cases, the interrogating agent knew or should have known under the circumstances that the accused had committed the unnamed offense. *See United States v. Johnson.* In some cases, the unnamed offense may be so closely related to the charged offense that the rights advisement as to the nature of the offense necessarily includes the activity of the unnamed offense. *See, e.g., United States v. Quintana,* 5 M.J. 484, 487 (C.M. A.1978) (informing accused he was suspected of larceny sufficiently oriented him with respect to wrongful appropriation). No reasonable stretch of imagination can relate writing bad checks to the government and acting as a courier of illegal drugs. A warning concerning the bad check offense would neither arouse suspicion of, nor orient an accused to, a violation of Article 112a.

This court cannot find that G's question to appellant, if he knew he was still under rights advisement, was an acceptable compliance with Article 31. The fact that a person may have known of his or her

rights under the provision is of no importance if the warnings were required but not given.[6] The law requires more than a cursory question; it requires information and advice, and the violation of Article 31(b) by a government agent renders the resulting statement inadmissible. *United States v. Ravenel,* 26 M.J. 344 (C.M.A. 1988).

■ Additionally, the court finds that even had Article 31 not been violated, appellant's statement was inadmissible under Military Rule of Evidence (Rule) 403. The statement, as it concerned the drug offenses, contained evidence of other alleged acts of extremely serious misconduct. In the opinion of the court, these alleged acts had no bearing on or relevance to the offenses of which appellant was convicted. The failure of the government to include any information regarding those acts in the stipulation of fact, prepared in support of appellant's pleas of guilty, supports this determination. These alleged acts cross the "point at which the misconduct is so unrelated to the offense charged as to be irrelevant." *United States v. Bono,* 26 M.J. 240, 242 (C.M.A.1988). We further note that the alleged acts of misconduct included acts for which appellant had been charged, and of which he had been found not guilty.[7] It was unconscionable for the government to attempt to impeach the verdict of not guilty by offering the statement in aggravation of the bad check offenses. Insofar as the statement included information about appellant's drug-related activities, it had no probative value and presented substantial danger of unfair prejudice. The admission of the statement by the military judge was erroneous and prejudiced appellant.

The court has determined that, absent the erroneous admission of appellant's statement, the sentence adjudged would have included at least a punitive discharge,

5. *See* Morris, *Rights Warnings in the Military; an Article 31(b) Update,* 115 Mil.L.Rev. 282–83 (Winter 1987).

6. M.C.M., 1984, Analysis of Mil.R.Evid. 305(c), App. 22, A22–14.

7. It is not material that these findings may have resulted from negotiations that led to the approval of a pretrial agreement.

confinement for six months and partial forfeitures. In view of the offenses, the admissible documented prior misconduct of appellant, and his poor record of service, we are convinced that such sentence is appropriate. We will therefore reassess the sentence. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

The findings of guilty are affirmed. Only so much of the sentence as provides for a bad-conduct discharge, confinement for six months and forfeiture of $300.00 pay per month for six months is affirmed.

Judge GILLEY and Judge KENNETT concur.