**UNITED STATES, Appellee,**

v.

**Sergeant George THOMPSON, Jr., 263–49–5771, United States Army, Appellant.**

**ACMR 8802746.**

U.S. Army Court of Military Review.

6 Nov. 1990.

For appellant: Captain Thomas A. Sieg, JAGC, Captain Gregory B. Upton, JAGC, Captain Kenneth G. Gale, JAGC (on brief).

For appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kathryn F. Forrester, JAGC, Captain Mark E. Frye, JAGC (on brief).

Before De GIULIO, NAUGHTON and VARO, Appellate Military Judges.

## OPINION OF THE COURT

VARO, Judge:

Contrary to his pleas, a special court-martial empowered to adjudge a bad-conduct discharge composed of officer and enlisted members convicted the appellant of eight specifications of violation of a general regulation by fraternization in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 (1982) [hereinafter UCMJ]. His approved sentence includes a bad-conduct discharge, confinement for sixty days, forfeiture of $300.00 pay per month for two months, and reduction to the grade of Private E1.

The appellant asserts two assignments of error from his court-martial:

1. that the military judge erred in taking judicial notice of a Fort Gordon regulation; and

2. that the military judge erred in admitting inculpatory statements by the accused, as these statements were the result of inadequate warnings under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831.

### Judicial Notice

Over defense objection at trial, the military judge took judicial notice of Fort Gordon Regulation 600–9 [1] which proscribes relationships between cadre and soldiers in training. The defense objection went to the issue of whether the regulation was properly filed and authenticated. After reviewing the applicable Army Regulations in effect at the time of promulgation of the Fort Gordon Regulation [2], the mili-

---

1. US Army Signal Center and Fort Gordon Regulation 600–9, Personnel General: Permanent Party—Student Relationships, para. 4(c) (8 Dec. 1986).

2. Army Regulation 310–2, Identification and Distribution of DA Publications and Issue of Agency and Command Administrative Publication, para. 4–12 (Change 5, 1 Dec. 1983); Army

tary judge took judicial notice of the regulation. He also heard testimony from Fort Gordon personnel responsible for control and distribution of regulations on the installation. Based on our review of the record of trial, we find no error in the military judge's determination.

 The appellant now wishes to challenge the regulation on a totally different basis, that being that the regulation was never properly issued by the Commander, Fort Gordon. As this issue was not raised at trial, we consider it waived. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 801(g); *See United States v. Dial*, 26 C.M.R. 480 (C.M.A.1958). Assuming *arguendo* that the objection at trial was sufficient to preserve the objection on appeal, we have found the military judge's determination with regard to filing and authentication to be proper. Further, the appellant has provided no additional grounds for his assertion and we find no basis upon which to ignore the presumption of administrative regularity. *United States v. Masusock*, 1 C.M.R. 32 (C.M.A. 1951). Thus, the assertion of error is without merit.

### Article 31(b), UCMJ Warnings

The appellant further asserts that the military judge erred in admitting evidence of the appellant's statements to Sergeant (SGT) Lowery (another drill sergeant), and Sergeant First Class (SFC) Snyder (the appellant's first sergeant), because these statements were made without proper rights warnings required by UCMJ Article 31.

On 15 August 1988, SGT Lowery was performing duties as Charge of Quarters. She also was the drill sergeant responsible for the female platoon in the company. During her watch, several of the female soldiers under her responsibility came to her to complain about various acts of sexual fraternization by the appellant. The appellant arrived while some of the trainees were talking to SGT Lowery. The appellant entered her office and told her he

wanted to tell the truth. SGT Lowery's immediate response was "[w]hat are you doing with my Privates?" The appellant proceeded to tell her that he had become involved with only one Private and that he intended to continue to see her.

On 16 August 1988, SGT Lowery advised SFC Snyder that he needed to talk to the appellant about potential problems with personnel in the female platoon. SFC Snyder summoned the appellant to his office sometime between 1200 and 1400 hours. He advised the appellant of his rights under Article 31, and told him that appellant's name was brought to his attention with regard to possible fraternization with certain female soldiers in the unit. The appellant waived his rights and agreed to talk with SFC Snyder stating "you go right ahead and do what you got to do. I have nothing to hide." SFC Snyder did further investigation after the appellant left and then called the appellant back to his office around 1900 hours the same day. At this time, SFC Snyder did not re-read the appellant his rights under Article 31. Rather, he just confronted him by telling him he did not believe he was telling the truth. According to SFC Snyder, the appellant then admitted to having an affair with one of the female soldiers in question.

The appellant's oral statements to SGT Lowery and SFC Snyder were admitted at trial over defense objection.

#### 1. Statement to Sergeant Lowery

 We agree with the appellant's assertion that the military judge was incorrect in ruling that because there was no custodial situation involved, the appellant's statement to SGT Lowery was admissible. With a custodial situation, the obligation to give Fifth Amendment warnings under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *United States v. Tempia*, 37 C.M.R. 249 (C.M.A. 1967) would have arisen. However, custody is not required to activate the duty to warn under UCMJ Article 31. *See United*

---

Reg. 340–15, Preparing and Managing Correspondence, para. 7–1 (12 Nov. 1986), *superseded by*, Army Reg. 25–50, Preparing and Managing Correspondence (21 Dec. 1988).

*States v. Churnovic,* 22 M.J. 401 (C.M.A. 1986).

■■ The determination of admissibility of the statement to SGT Lowery thus rests on whether she was required to give warnings under Article 31 when speaking to the appellant. The standard for making this determination is set forth in Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 305 [hereinafter Mil. R.Evid.].[3]

Applying the applicable portions of Military Rule of Evidence 305 to the facts in question, we hold that Sergeant Lowery was not required to give Article 31 warnings in this case. The nature of her conversation with the appellant was one which we do not find to be an interrogation as defined by Military Rule of Evidence 305. We come to this conclusion for the following reasons:

a. SGT Lowery was receiving unsolicited complaints about the appellant from female personnel when the appellant came into her office and stated: "I want to tell you the truth."

b. SGT Lowery had not summoned the appellant officially or unofficially to her office. In fact, she stated she was surprised to have him just walk in and start talking.

c. SGT Lowery responded to the appellant's presence by stating: "[w]hat are you doing with my Privates?"

d. Although SGT Lowery's response to the appellant was in the form of a question, we find it to be a statement of concern for her subordinate personnel, and not a question to which she expected an incriminating answer from the appellant.

e. The appellant had a conversation with SGT Lowery, and at least two of the complainants, during which appellant admitted he had become involved in a relationship with one trainee. Following this conversation, SGT Lowery advised SFC Snyder that he needed to talk to the appellant about a potential problem in dealing with women in the unit.

As we have found no formal or informal attempt at "interrogation" by SGT Lowery, nor any indication that she was involved in an investigative role at the time she was confronted by the appellant, there was no requirement that SGT Lowery provide the appellant warnings pursuant to Article 31(b). Therefore, any statement made to her at that time was properly admissible at the appellant's court-martial. *United States v. Loukas,* 29 M.J. 385 (C.M.A.1990). Further, we do not find the conversation between SGT Lowery and the appellant to have resulted in any way because of her role as Charge of Quarters on the day in question. Thus, there was no actual or subtle pressure on the appellant so as to trigger the Article 31 rights advisement based on *United States v. Duga,* 10 M.J. 206 (C.M.A.1981).

### 2. Statement to Sergeant First Class Snyder

■■ The appellant asserts that his statements to SFC Snyder are inadmissible because they are derivative of inadmissible statements to SGT Lowery. Our determination above resolves this issue in favor of

---

**3.** Mil.R.Evid. 305. *Warnings about rights*

(a) *General rule.* A statement obtained in violation of this rule is involuntary and shall be treated under Mil.R.Evid. 304.

(b) *Definitions.* As used in this rule:

(1) *Person subject to the code.* A "person subject to the code" includes a person acting as a knowing agent of a military unit or of a person subject to the code.

(2) *Interrogation.* "Interrogation" includes any formal or informal questioning in which an incriminating response either is sought or is a reasonable consequence of such a questioning.

(c) *Warnings concerning the accusation, right to remain silent, and use of statements.*

A person subject to the code who is required to give warnings under Article 31 may not interrogate or request any statement from an accused or a person suspected of an offense without first:

(1) informing the accused or suspect of the nature of the accusation;

(2) advising the accused or suspect that the accused or suspect has the right to remain silent; and

(3) advising the accused or suspect that any statement made may be used as evidence against the accused or suspect in a trial by court-martial.

. . . .

the government. The appellant further asserts that the statements to SFC Snyder on the evening of 16 August 1988 are inadmissible because they were made without proper Article 31 warnings from SFC Snyder to the appellant. The appellant conceded at trial that the initial Article 31 warning that day was proper. The defense also now concedes that the second meeting between the appellant and SFC Snyder occurred five to seven hours later, around 1900 hours on the same day. This is consistent with the determination of the military judge.

In his testimony on the motion to suppress, SFC Snyder stated that the initial Article 31 warning given to the appellant concerned possible fraternization with a female soldier in the unit. He further stated that he summoned the appellant back to his office after meeting with several female soldiers and hearing their complaints. Citing *United States v. Huelsman*, 27 M.J. 511 (A.C.M.R.1988), the appellant asserts that because the second meeting encompassed a larger number of allegations and because seven hours had passed since the first rights warning, a new rights warning was required. We disagree. We find *Huelsman* distinguishable. In that case, the accused had been warned, pursuant to Article 31, regarding the offense of larceny by uttering worthless checks. At a subsequent interrogation he admitted not only the check offenses, but also, his involvement with drugs. Because of the limited scope of the original Article 31 warning, this court determined that the statement regarding drug involvement was improperly admitted in aggravation. The scenario is quite different in the case at bar. The second meeting between the appellant and SFC Snyder involved the same regulatory violations discussed earlier in the day, just more of them. In fact, the appellant admitted nothing more than the same infraction he had earlier admitted in his conversation with SGT Lowery. The appellant clearly was on notice of the nature of the inquiry based on the original Article 31 warning. The passage of seven hours between the time of the warnings and the second meeting was not so great a time, under the facts presented, so as to require additional warnings. *United States v. Schultz*, 41 C.M.R. 311 (C.M.A.1970) (separate inquiry can constitute a single continuous interview without the requirement for additional rights advisement).

The findings of guilty and the sentence are affirmed.

Senior Judge De GIULIO and Judge NAUGHTON concur.