# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HOLDEN, HOFFMAN, and COOK
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class CHANCE E. REDD**
**United States Army, Appellant**

ARMY 20051123

US Army Military District of Washington
Lauren B. Leeker, Military Judge
Colonel Sarah S. Green, Staff Judge Advocate

For Appellant:  Major William M. Fischbach III (argued); Colonel Christopher J. O'Brien, JA; Lieutenant Colonel Steven C. Henricks, JA; Major Sean F. Mangan, JA; Major William M. Fischbach III (on specified issues reply brief); Colonel Christopher J. O'Brien, JA; Lieutenant Colonel Steven C. Henricks, JA; Major Sean F. Mangan, JA; Major William M. Fischbach III (on specified issues brief); Lieutenant Colonel Steven C. Henricks, JA; Major Tyesha E. Lowery, JA; Captain Ryan M. Suerth (on brief).

For Appellee:  Captain Phillip M. Staten, JA (argued); Colonel John W. Miller II, JA; Major Elizabeth G. Marotta, JA; Major Tami L. Dillahunt, JA; Captain Phillip M. Staten, JA (on specified issues brief); Colonel John W. Miller II, JA; Major Elizabeth G. Marotta, JA; Captain Phillip M. Staten, JA (on brief).

26 November 2008

---------------------------------
OPINION OF THE COURT
---------------------------------

HOFFMAN, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of receiving child pornography on divers occasions in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ].  The panel sentenced appellant to a bad-conduct discharge and confinement for ninety days.  This case is before us for review under Article 66, UCMJ.

Appellant's lone assignment of error asserts the military judge improperly denied appellant's motion to suppress his statements to law enforcement and the derivative child pornography evidence. Appellant alleges his confession was coerced because a civilian detective told appellant he would be placed in confinement for seventy-two hours if appellant exercised his right to counsel. [1] After reviewing this assertion of error, this court specified two additional issues.[2]

_____

[1] Appellant has not established his confession was coerced. While Detective Sims was imprecise in informing appellant about his right to military counsel and when such counsel would be available, this alone does not demonstrate that appellant's "will was overborne." *United States v. Freeman*, 65 M.J. 451, 454 (C.A.A.F. 2008). In this case, there were no threats of physical abuse by Detective Sims or SA Silvas. The interrogation did not continue for a prolonged period of time and there was no evidence of imprisonment during questioning. Under the totality of the circumstances surrounding the 5 January 2005 statement, we conclude appellant's statement was not obtained "through the use of coercion, unlawful influence, or unlawful inducement." *Id*. at 453 (quoting Mil. R. Evid. 304(a)); *see also United States v. Bubonics*, 45 M.J. 93, 95 (C.A.A.F. 1996)).

[2] The following issues were the specified by this court:

I

WHETHER APPELLANT'S RIGHTS UNDER ARTICLE 31, UNIFORM CODE OF MILITARY JUSTICE (UCMJ), WERE TRIGGERED WHEN APPELLANT WAS INTERVIEWED BY DETECTIVE JOHN SIMS, A CIVILIAN POLICE DETECTIVE, AND SPECIAL AGENT JOHN SILVAS, A MEMBER OF THE CRIMINAL INVESTIGATION COMMAND (CID). *SEE UNITED STATES V. BRISBANE*, 63 M.J. 106 (C.A.A.F. 2006). IF ARTICLE 31, UCMJ, RIGHTS WERE TRIGGERED, AT WHAT POINT IN QUESTIONING WERE THEY REQUIRED?

II

ASSUMING ARGUENDO THAT APPELLANT'S ARTICLE 31, UCMJ, RIGHTS WERE TRIGGERED, DID THE NOTIFICATION OF RIGHTS UNDER *MIRANDA V. ARIZONA*, 384 U.S. 436 (1966), SUFFICIENTLY COVER NOTICE OF APPELLANT'S STATUTORY RIGHTS

(continued . . .)

Under the facts of this case, we find appellant's rights under Article 31, UCMJ [hereinafter Article 31], were triggered when appellant was interviewed at the same time and location by a special agent of the U.S. Army Criminal Investigation Command (CID) and a civilian police detective investigating an offense that violated both state and military law. However, we hold the notification of rights provided by the civilian detective under *Miranda v. Arizona,* 384 U.S. 436 (1966), coupled with notice of the allegation against him, satisfied the notice of appellant's rights required by Article 31 and Military Rule of Evidence [hereinafter Mil. R. Evid.] 305.

## **FACTS**

### *Background*

Appellant was convicted of a single specification of receiving child pornography on divers occasions:

> In that Private First Class Chance E. Redd, U.S. Army, did on divers occasions between on or about 1 January 2004 and on or about 05 January 2005, at or near Walter Reed Army Medical Center, Washington D.C., knowingly receive material containing child pornography, as defined in Title 18, United States Code, Section 2256, which had been mailed, or shipped, or transported in interstate commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(2)(B).

In early January 2005, Laurel City Police Detective John Sims received a complaint alleging appellant engaged in acts of sexual misconduct with a female under the age of sixteen within the detective's investigative jurisdiction. The nature of the allegation was summarized in the following specification:

> In that Private First Class Chance E. Redd, U.S. Army, did, on divers occasions, between on or about 20 December 2004 and on or about 05 January 2005, at or near Laurel, Maryland, through the use of the internet and/or cellular telephone . . . entice and/or induce [MG], a

---

(. . . continued)
UNDER ARTICLE 31, UCMJ. *SEE UNITED STATES V. GARDINIER*, 65 M.J. 60 (C.A.A.F. 2007); *BUT SEE UNITED STATES V. HOFBAUER*, 2 M.J. 922 (A.C.M.R. 1976), *AFFIRMED*, 5 M.J. 409 (C.M.A. 1978).

person under the age of 16, then known to him to be under
the age of 16, to meet him for the purposes of engaging in
sexual intercourse . . . .

Because appellant was an active duty soldier, Detective Sims contacted the nearby Fort Meade Criminal Investigation Command (CID) office to notify them of the investigation and locate appellant for an interview. In response to Detective Sims' request, CID Special Agent (SA) Silvas was assigned to observe the interview.

At the interview, SA Silvas was introduced as a Fort Meade CID agent to appellant. Detective Sims initially spent twenty to thirty minutes engaging in conversation unrelated to the investigation to build rapport with appellant. Special Agent Silvas participated in that discussion during which time appellant was not asked any questions about the sexual misconduct under investigation. Detective Sims told appellant he was not under arrest, was there of his own free will, and could leave at any time. Following the rapport building discussion, Detective Sims advised appellant of his *Miranda* rights for sexual intercourse with a minor using a Laurel City Police Department standard form; however, appellant was not separately advised of his rights under Article 31.

Appellant admitted to Detective Sims three instances of sexual intercourse with a minor, prepared a written statement to that effect, and reviewed the statement with Detective Sims. In appellant's statement, he admitted meeting the minor [MG] in an internet chat room.[3] In response to questions from Detective Sims, appellant admitted he previously obtained sex from another person he met online. Detective Sims then asked appellant for consent to search his computer to determine whether his online conversations involved other minor children.

Appellant asked Detective Sims how a computer search would be conducted and whether such a search might reveal more than online chat records. Detective Sims replied he did not have specific knowledge of the examination techniques as the tests were conducted at a forensic laboratory. At that point, appellant told Detective Sims he might have "other things on his computer that were mistakes or accidents." Pressed for details, appellant slumped down and stated he "had something bad." Detective Sims recalled appellant then "either said he likes them young or had images of young girls on his computer." When asked by Detective Sims to disclose "the youngest [age of a girl] that you would have on your computer, that you said you've viewed," appellant replied "three years of age."

---

[3] An internet "chat room" is an online virtual meeting place where conversants "engage in real time dialogue . . . by typing messages to one another that appear almost immediately on the others' computer screens." *Reno v. ACLU,* 521 U.S. 844, 851-852 (1997).

According to Detective Sims' testimony, "[i]t was at that point we started into a whole different area of investigating [possession of child pornography]."[4] Special Agent Silvas took control of part of the ensuing questioning; his questions and appellant's responses are identified as such in question and answer format on appellant's sworn statement. In those responses, appellant admitted knowingly downloading and possessing child pornography.

In addition to his sworn statement regarding his admissions, appellant consented to a search of his computer and computer accessories. The subsequent search by the Laurel City Police Department revealed appellant possessed child pornography, including a sexual image of an actual child victim identified through live testimony and information from the National Center for Missing and Exploited Children.

### Military Judge's Findings of Fact/Conclusions of Law

The military judge made detailed findings of fact in which she concluded appellant's interview was for the purpose of carrying out a civilian criminal investigation. She further found appellant knowingly and voluntarily waived his rights to counsel by initialing and signing the Laurel Police Department form, made oral and written statements admitting to three instances of sexual intercourse with a female under the age of 16, admitted possessing child pornography, and knowingly and voluntarily consented to a search of his computer, disks, and related items.[5]

The military judge made the following conclusions of law:

> (1) The Fifth Amendment and Miranda warnings – I find that the 5 January 2005 interview by the Laurel police department did not constitute a custodial interrogation, and accordingly, although given by Detective Sims in accordance with the Laurel police department policy, were not legally required.

---

[4] Prior to appellant's disclosure regarding possession of child pornography, neither Detective Sims nor SA Silvas suspected appellant of that offense. The shift in focus of the investigation to child pornography is reflected in appellant's handwritten sworn statement which transitions from a narrative about his sexual relationship with the minor to questions and answers on the same, followed by a new narrative by appellant addressing possession of child pornography, with subsequent questions and answers on that topic.

[5] The military judge's pertinent findings of fact are located at the Appendix to this opinion.

(2) Article 31(b) – I find that the investigation was conducted by the Laurel police department. This investigation was a civilian criminal investigation. Special Agent Silvas was invited to be present at the interview, but, Laurel police department remained the lead and controlling agency.

I further find that Special Agent Silvas' involvement, even in asking some questions, did not convert the investigation into a joint investigation, or turn Detective Sims into a[n] agent of the Criminal Investigation Division. However, even if Article 31(b) was triggered for Special Agent Silvas' involvement in the interview, the requirement was clearly met with the advice given. Detective Sims informed the accused of the nature of the offense, his right to remain silent, and the possible use of any statements given.

(3) The accused's child pornography statements . . . I find that the initial advisement, that is that the accused was being questioned related to sexual misconduct with an underage female, was sufficient.

Special Agent Silvas was not required to re-advise the accused when he made his child pornography statements, because child pornography falls within the penumbra of misconduct with a minor.

The accused was being investigated for misconduct with a minor. This misconduct included the use of a computer and the internet. The investigation would logically include inquiries relating to misconduct involving other minors, which is not limited to instances identical to the incident with [the victim]. The conduct was within the frame of reference supplied by Detective Sims.

Further, there is no evidence that Detective Sims or Special Agent Silvas knew of these other offenses, and were using the interrogation as a subterfuge to inquire into the area of child pornography.

(4) [Mil. R. Evid. 304] and the voluntariness of the accused's statements – The government has more than met

[its] burden of proving by a preponderance of the evidence that the accused's statements were voluntary.

(5) The search – In accordance with [Mil. R. Evid. 314(e)], considering all the evidence, I find the government proved by clear and convincing evidence that the accused voluntarily consented to the search of related computer accessories and hardware.

Accordingly, the defense motion to suppress is denied . . . .

## LAW

The Supreme Court in *Miranda v. Arizona* held in pertinent part:

Before a person in custody may be interrogated, he must be informed 'in clear and unequivocal terms that he has the right to remain silent'; that 'anything said can and will be used against [him] in court'; that 'he has the right to consult with a lawyer and to have the lawyer with him during interrogation'; and that 'if he is indigent a lawyer will be appointed to represent him.'

*Hofbauer*, 2 M.J. at 924 n.4 (quoting *Miranda*, 384 U.S. at 467-73).

Similarly, Article 31(b) provides:

No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

Mil. R. Evid. 305(d)(2) provides a right to counsel "without regard to the person's indigency or lack thereof before the interrogation may proceed." *See also United States v. Tempia,* 16 C.M.A. 629, 37 C.M.R. 249 (1967) (Because *Miranda* is applicable to military interrogations, servicemembers have the right to request

appointment and presence of an attorney at custodial interrogations).[6]

Civilian investigators working in conjunction with military officials must comply with Article 31: "(1) When the scope and character of the cooperative efforts demonstrate 'that the two investigations merged into an indivisible entity,' and (2) when the civilian investigator acts 'in furtherance of any military investigation, or in any sense as an instrument of the military.'" *United States v. Rodriguez*, 60 M.J. 239, 251 (C.A.A.F. 2004) (quoting *United States v. Penn*, 18 C.M.A. 194, 199, 39 C.M.R. 194, 199 (1969)). In analyzing whether civilian and military criminal investigations have merged into one indivisible entity, military courts consider "whether the two police organizations proceeded independently and for their own purposes." *United States v. Swift*, 17 C.M.A. 227, 232, 38 C.M.R. 25, 30 (1967).

## DISCUSSION

### *Joint Investigation*

While we affirm a military judge's findings of fact unless they are clearly erroneous, we review a military judge's conclusions of law de novo. *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007) (citations omitted). Contrary to the conclusions drawn by the military judge, we find the questioning conducted together by the civilian and military investigators in this case constituted a joint investigation and implicated appellant's Article 31 rights. *See Rodriguez*, 60 M.J. at 252.

In *United States v. Oakley*, 33 M.J. 27 (C.M.A. 1991), an noncommissioned officer (NCO) acting as a liaison with civilian law enforcement personnel accompanied them to appellant's quarters where they advised appellant of his *Miranda* rights and questioned him about civilian offenses. Appellant was eventually charged with those offenses at a court-martial. Although an NCO asked the accused several questions at the end of the interview, our superior court concluded that investigation was purely civilian in nature and no Article 31 warnings were required. *Id*. at 30.

This case is factually distinguishable from *Oakley*. The level of cooperation and participation between Detective Sims and SA Silvas demonstrate there were two separate investigations of sexual misconduct with the minor child, MG, that merged.

---

[6] The right to counsel regardless of indigency in military jurisprudence is not a statutory right pursuant to Article 31; rather, it flows from the President's promulgation of Mil. R. Evid. 305(d). *See generally Gardinier*, 65 M.J. 60. Evidence obtained in violation of Mil. R. Evid. 305 is generally inadmissible except as provided in Mil. R. Evid. 304(b)(2) and (3). *See United States v. McClelland*, 26 M.J. 504, 507 (A.C.M.R. 1988).

Special Agent Silvas was physically present for appellant's entire interview and sat near Detective Sims and appellant. Special Agent Silvas stated unequivocally he participated in the interview with Detective Sims and he testified, "I know that I did a lot of talking during that time." While SA Silvas could not recall exactly what was said, he testified, "I just bounced off of Detective Sims [questioning] the whole time." In fact, SA Silvas notified appellant after Detective Sims read the *Miranda* warnings that "those [rights] also apply in the military," in apparent recognition of the potential UCMJ implications of the questioning about to take place; however, SA Silvas provided no further explanation in satisfaction of the Article 31 requirements.

The following facts not cited by the military judge are significant in this case. In his Report of Investigation, Detective Sims related he "spoke [with CID] Special Agent-in-Charge [SAC] Dallas Herpin" after the initial allegation was brought forward. He indicated SAC Herpin told him the offense initially under investigation, while a misdemeanor in Maryland, was a felony offense under military law. Detective Sims noted Agent Herpin said he would like "to *make this a joint collaboration case* and requested [an agent] to be present [when appellant was] questioned. . . ." (emphasis added).

We look to the surrounding facts to determine whether an investigation is joint or separate for purposes of applying Article 31 rights warning requirements and are not bound by the characterization of the investigation by civilian or military law enforcement agencies. A unilateral or mutual expression of desire for collaborative investigative work by respective civilian and military officials is but one factor we consider. In this case, the actions by the respective investigative agencies demonstrate their intent to pursue the investigation together. It is clear there were two investigations that merged before the interview began. Both the military investigator and civilian detective asked questions at various times during the investigation and participated fully in the interview process. The assistance and questioning by SA Silvas in this case constituted "participation" within the meaning of Article 31, and the military judge erred in finding those rights warnings were not required.

### *Miranda v. Article 31*

As we have concluded SA Silvas participated in a joint investigation with Detective Sims, Article 31 rights warnings were required in this case. Accordingly, we now determine whether the *Miranda* rights advisement given by Detective Sims, in conjunction with the discussion Detective Sims and appellant had regarding why appellant was at the police station, complied with the requirements of Article 31(b). *See generally United States v. Simpson*, 54 M.J. 281, 284 (C.A.A.F. 2000) ("Advice as to the nature of the charge need not be spelled out . . . .").

9

Appellant does not contend the *Miranda* warnings were inadequate and we find appellant voluntarily, knowingly, and intelligently waived those *Miranda* rights prior to talking to the military and civilian investigators. Rather, appellant asserts because the *Miranda* warnings did not sufficiently address all of appellant's Article 31 rights, appellant was not properly notified of his right to counsel and the nature of the charges against him. Since we find the questioning was conducted as part of a joint investigation, we will review both the civilian and military investigator's statements to appellant to determine whether the Article 31 warning requirements were satisfied. *See generally Gardinier*, 65 M.J. at 63-64.

Our court has previously noted the subtle distinctions between the rights warning requirements of Article 31 and *Miranda*. *See Hofbauer*, 2 M.J. at 922; *see also United States v. Rogers*, 47 M.J. 135, 137 (C.A.A.F. 1997) (outlining the differences between the rights warnings under Article 31 and *Miranda*). Both Article 31 and *Miranda* require notice to a suspect of the right to silence and the consequences that may flow from statements made after waiver of that right. They differ in that Article 31 requires notice to the suspect of the nature of the offense under investigation while *Miranda* does not; in addition, *Miranda* requires notice of a right to appointed counsel without charge for indigent suspects.[7]

### *Right to Counsel*

In this case, Detective Sims notified appellant "[y]ou have the right to talk to a lawyer before any questioning and to the presence of a lawyer before answering any questions or at any time while questioned." Additionally, appellant was notified an attorney would be provided for him if he could not afford one. Although this advisement did not fully inform appellant that his right to military counsel was not contingent upon indigency, this omission alone does not demonstrate appellant's Article 31 and Mil. R. Evid. 305 rights warning requirement was not satisfied. *See also United States v. Schroeder*, 39 M.J. 471 (C.M.A. 1994) (appellant's statement that he would eventually get a lawyer did not amount to an invocation of his *Miranda* rights which would have required the investigator to stop the interview.).

Our courts have looked at the surrounding circumstances to determine whether a suspect was on proper notice of his Article 31 rights.[8] *Cf. California v. Prysock,*

---

[7] The latter has limited relevance in a military setting. As previously noted, the right to appointed military counsel for soldiers exists regardless of indigency. *See* Mil. R. Evid. 305(d)(2).

[8] Military courts have historically viewed the Article 31 rights warning as having a "substantial compliance" element. *See Simpson*, 54 M.J. at 284; *United States v.*

(continued . . .)

453 U.S. 355 (1981) (during *Miranda* warnings the defendant was not explicitly told of his right to have a lawyer appointed before further interrogation. The Supreme Court held under the circumstances the defendant was adequately informed of his right to counsel and a rigid verbatim recitation of *Miranda* warnings was not required.). In this case, Detective Sims' notification of right to counsel was sufficient. Appellant was a twenty year-old high school graduate with a GT score of 113. At no time prior to or during the interview did appellant ever invoke his right to counsel to either the CID agent or civilian investigator. Even on appeal, appellant does not assert he waived his right to counsel based on a misunderstanding of indigency as a threshold requirement. It is undisputed appellant waived his *Miranda* rights and agreed to talk without a lawyer being present. We therefore find the *Miranda* warnings—combined with notification of the substance of the original allegation against appellant—sufficiently satisfied notification of appellant's right to counsel for purposes of Article 31 and Mil. R. Evid. 305.

*Notice of Nature of Charges*

We next address whether a new rights warning was required after appellant revealed his possession of child pornography. The interrogation on that offense arguably encompassed an allegation not addressed when appellant received his rights warning. Our superior court has considered three non-exhaustive factors when analyzing whether the nature-of-the-accusation requirement was satisfied under Article 31. *Simpson*, 54 M.J. at 284. Those factors include: "whether the conduct is part of a continuous sequence of events; whether the conduct was within the frame of reference supplied by the warnings; and whether the interrogator had previous knowledge of the unwarned offenses." *Id.* (citations omitted).

In *United States v. Huelsman*, 27 M.J. 511 (A.C.M.R. 1988), appellant was given Article 31 warnings regarding the offense of larceny by uttering worthless checks. At a subsequent interrogation, he admitted involvement with drugs in addition to the check offenses. This court held the statement regarding drug involvement was improperly admitted because of the limited scope of the original Article 31 warning. *Id.* at 514.

The scenario here is quite different from *Huelsman*. We agree with the premise that appellant must be made aware of the general nature of the allegation and the warning must include the area of suspicion and "sufficiently orient the accused toward the circumstances surrounding the event." *Huelsman*, 27 M.J. at 513 (citing *United States v. Schultz,* 19 C.M.A. 31, 41 C.M.R. 31 (1970)). In this case,

---

(. . . continued)
*Wimberley*, 16 C.M.A. 3, 36 C.M.R. 159 (1966); *United States v Higgins,* 6 C.M.A. 308, 20 C.M.R. 24 (1955); *United States v O'Brien*, 3 C.M.A. 325, 12 C.M.R. 81 (1953); *Hofbauer*, 2 M.J. 922.

however, appellant clearly was on notice of the nature of the inquiry based on the original *Miranda* warning. "The precision and expertise of an attorney in informing an accused of the nature of the accusation under Article 31 is not required." *Simpson*, 54 M.J. at 284.

Unlike *Huelsman*, there was no interruption between the original rights warning, the interview during which appellant spontaneously announced he possessed child pornography, and the continued questioning on that offense. Additionally, the allegation of sexual misconduct involving a child occurred during the same period of time that appellant was illegally downloading child pornography. Therefore, the conduct being investigated, as well as the questioning process, was "continuous in nature." *Simpson*, 54 M.J. at 284.

Second, the original allegation of use of a computer to commit child sex offenses through the use of internet chat was sufficiently related to the allegation of possession of downloaded child pornography as to orient appellant to the nature of the offense. *See United States v. Pipkin*, 58 M.J. 358 (C.A.A.F. 2003) (rights warning regarding use, possession and distribution of controlled substances was within frame of reference under facts to encompass conspiracy to distribute drugs); *Rogers*, 47 M. J. at 135 (rights warning of "sexual assault" sufficient to orient accused to rape and attempted rape offenses, even involving a second victim); *Schultz,* 19 C.M.A. 311, 41 C.M.R. 311 (separate inquiries can constitute a single continuous interview without the requirement for additional rights advisement); *United States v. Kelley*, 48 M.J. 677 (Army Ct. Crim. App. 1998) (warning regarding rape offense sufficient to orient accused toward unwarned burglary and false swearing offenses where burglary was required to gain access to victim and false statement denied any presence in room where rape occurred); *United States v. Erie*, 29 M.J. 1008 (A.C.M.R. 1990) (warnings that accused was being investigated for use of hashish were sufficient to cover subsequent statements regarding controlled substances).

Finally, Detective Sims and SA Silvas did not have knowledge of appellant's possession of child pornography when appellant was originally notified of the allegations against him. *See United States v. Davis*, 8 C.M.A. 196, 198, 24 C.M.R. 6, 8 (1957) (citing *United States v Dickenson*, 6 C.M.A. 438, 20 C.M.R. 154 (1955)) ("It is obvious, however, that if the examiner is without knowledge or suspicion that a particular offense has been committed by the person to be questioned, he cannot provide the preliminary advice required by Article 31."). Consequently, the other factor mentioned in *Simpson*, 54 M.J. at 284, "whether the interrogator had previous knowledge of the unwarned offenses," weighs in favor of our finding appellant's Article 31 rights were satisfied.

## CONCLUSION

We review *in toto* the rights warnings and statements made to suspects by civilian and military investigators in joint investigations when determining whether Article 31 warning requirements were satisfied. Although Article 31 rights were required in this case, the *Miranda* warnings provided to appellant and notification of the offense of which he was originally suspected sufficiently satisfied appellant's Article 31 and Mil. R. Evid. 305 rights.[9]

We have reviewed the remaining assignments of error, to include the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit. The finding of guilty and sentence are affirmed.

Senior Judge HOLDEN and Judge COOK concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[9] Our decision that the *Miranda* warning satisfied Article 31 in this case is fact specific and does not change the preferred practice of advising an accused of his *Miranda* and Article 31 rights before questioning in a joint investigation.

**APPENDIX**

The military judge made the following pertinent findings of fact:

(1) On 5 January 2005, the Laurel police department received a complaint regarding acts of sexual misconduct with [MG], a female under the age of 16. [MG] identified the perpetrator as [appellant].

(2) Further investigation revealed that the accused is a member of the United States military. Laurel, Maryland is a suburb located adjacent to Fort Meade, Maryland. Given the proximity to Fort Meade and the National Capital Region, a significant military population resides in and around Laurel. In recognition of the U.S. government's war time status, Laurel police policy dictates that the Provost Marshal be notified when military service members are identified as subjects of criminal investigations.

(3) Laurel police authorities contacted the Fort Meade Provost Marshal and Criminal Investigation Division offices in their efforts to carry out this notification and locate the accused. The accused was located at Walter Reed Army Medical Center.

(4) Detective John Sims, Laurel police department, initiated contact with the accused's command and arranged for the accused to appear for an interview. Additionally, Detective Sims requested and CID provided an investigator, Special Agent John Silvas, who was present during the interview.

(5) The interview was for the purpose of carrying out a civilian criminal investigation. There was no question in either Detective Sims' or Special Agent Silvas' mind that the Laurel police department was the lead agency in this investigation.

(6) The accused presented himself at the Laurel police department offices at approximately 1645 on 5 January 2005. The accused was accompanied by his first [line] supervisor, Sergeant McIlwain.

(7)  Shortly after his arrival, Detective Sims escorted the accused to the interview room.  The accused stated that he wanted Sergeant McIlwain to accompany him as a witness.  Detective Sims informed Sergeant McIlwain that she was not authorized to be present during the interview, but, that the accused was not under arrest and that she was welcome to wait for him, because he would be back once the interview was completed.  The accused overheard this conversation.

(8)  Present in the interview were Detective Sims, Special Agent Silvas, and the accused.  Detective Sims made introductions and spent 20 to 30 minutes engaging in small talk unrelated to this investigation, and gathering administrative data.  During this period, the accused was informed that he was not under arrest.

(9) After this initial period, Detective Sims advised the accused of his Miranda rights, using he standard Laurel police department form.  Detective Sims informed the accused that they wanted to speak to him regarding instances of sexual misconduct with an underage female.

        During the rights advisement, the accused asked what procedures was used if an individual requested a lawyer.  Detective Sims explained the standard procedure for individuals who are under arrest, and for those who are not.  Detective Sims reminded the accused that he was not under arrest.  Detective Sims indicated that he did not know what the military procedures were for such a situation.

(10)  The accused was read, understood, and waived his rights, initialing and signing the Laurel police department form, which was likewise signed by Detective Sims and witnessed by Special Agent Silvas at 1805 on 5 January 2005.

(11)  As a result of the interview the accused made oral and written statements admitting to three instances of sexual intercourse with [MG], a female under the age of 16, who he met in an internet chat room.

(12)  At the time of the interview, [appellant] was a twenty year old Private First Class with almost two years in the Army, and a single tour overseas.  He is a well spoken soldier with a GT score of 113.

The interview was held in a room of ample size and comfortable temperature.  The accused was afforded reasonable breaks, offered refreshments, treated courteously, and in no way restrained.  The atmosphere of the interview was not coercive.  No promises of leniency or unlawful inducement were made.  The interview was remarkably short, lasting about two and a half hours.  The consent form being witnessed at 2019, 5 January 2005. . . . The accused was specifically asked during the interview how he felt he was treated, and indicated in his written statement that he felt detectives treated him "nice."

(13)  As a result of the interview and the accused's [admission] regarding the chat room and child pornography, Detective Sims requested and received written consent to a search of the accused's computer, disks and other related computer items. . . .  The accused intelligently and voluntarily consented to the search of his computer, disks and related items.

(14)  The accused accompanied by Sergeant McIlwain drove to his apartment in his POV.  The POV had previously been searched for weapons, and law enforcement personnel followed behind in their own vehicle.  No police personnel were in the accused's vehicle during the drive.
. . .

(16)  I find that both Detective Sims and Special Agent Silvas' testimony was credible.  They both presented professionally, were attentive and forthright in their answers.  There were minor inconsistencies, typical of the recollection of events several months in the past, but, their testimony was clearly supported by the documents prepared at the time.

This was in stark contrast to the accused's testimony, who demonstrated a highly selective memory

16

and his voice, head, and shoulders appreciatively dropped whenever he was asked difficult questions.

. . .